[Cite as *Frick v. Howell*, 2015-Ohio-3639.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| ALAN FRICK | : | |
| Plaintiff-Appellant, | : | |
| | | Case No. 14CA19 |
| v. | : | |
| | | <u>DECISION AND</u> |
| ABBY HOWELL, | : | <u>JUDGMENT ENTRY</u> |
| Defendant-Appellee. | : | RELEASED 09/01/2015 |

<u>APPEARANCES:</u>[1]

Kimberly J. McGuire-Haines, Hillsboro, Ohio, for Appellant.

Hoover, P.J.

{¶ 1} Alan Frick, appellant and father of L.H., appeals from the judgment of the

Highland County Common Pleas Court, Juvenile Division, that (1) denied his motion to modify a

previously agreed parenting entry, and (2) found appellee and mother of L.H., Abby Howell, in

contempt of the agreed parenting entry for interfering with his visitation rights.

{¶ 2} In his first assignment of error appellant contends that the trial court's custody

decision was against the manifest weight of the evidence because it failed to recognize that

modification of custody was in L.H.'s best interest, and that the benefits of the requested

---

[1] Appellee has not entered an appearance or otherwise participated in this appeal. If an appellee fails to file an appellate brief, App.R. 18(C) authorizes us to accept an appellant's statement of facts and issues as correct, and then reverse a trial court's judgment as long as the appellant's brief reasonably appears to sustain such action. *See State v. Miller*, 110 Ohio App.3d 159, 161–162, 673 N.E.2d 934 (4th Dist.1996). In other words, an appellate court may reverse a judgment based solely on a consideration of an appellant's brief. *See Helmeci v. Ohio Bur. of Motor Vehicles*, 75 Ohio App.3d 172, 174, 598 N.E.2d 1294 (6th Dist.1991); *Ford Motor Credit Co. v. Potts*, 28 Ohio App.3d 93, 96, 502 N.E.2d 255(10th Dist.1986); *State v. Grimes*, 17 Ohio App.3d 71, 71–72, 477 N.E.2d 1219 (12th Dist.1984). In the case at bar, despite appellee's failure to file an appellate brief, we will consider the entire record and will not dispose of this case based solely on consideration of appellant's brief.

modification outweighed any potential harm.[2] However, because a substantial amount of competent and credible evidence supports the trial court's finding that a change in custody would not be in the best interest of L.H., we hold that the trial court did not abuse its discretion in denying modification of custody.

{¶ 3} In his second assignment of error appellant asserts that the trial court erred by failing to award the full court costs and reasonable attorney's fees associated with the contempt proceedings. Because the trial court did not act unreasonably, arbitrarily, or unconscionably in fashioning its contempt remedy, we reject his argument.

{¶ 4} Therefore, we overrule his assignments of error and affirm the judgment of the trial court.

## I. FACTS

{¶ 5} Appellant and appellee are the natural parents of L.H. who was born on June 4, 2008. Paternity was established by administrative order. In January 2009, the parties, as part of an action for allocation of parental rights, executed an agreed entry that designated appellee the custodial and residential parent of L.H.  The agreed entry also granted appellant visitation rights. In addition, the agreed entry set forth the child support amount to be paid by appellant. On February 2, 2009, the trial court approved the agreed entry and journalized it.

{¶ 6} Since that time both parties have waged a vindictive battle described by the trial court as "a disingenuous and systematic plan to discredit the other in a misguided effort to gain some perceived advantage over the other concerning the parental rights of their minor child." The trial court further noted that the case history is "replete with he said she said allegations, a race to either law enforcement or Child Protective Services every opportunity an incident concerning the minor child occurs and embellishment of facts." Not surprisingly, such hostility

---

[2] The trial court did determine that a change in circumstances had occurred.

has manifested itself in several motions initiated by appellant-mostly seeking to (1) hold appellee in contempt of court for alleged violations of his visitation time, and (2) to be made residential parent and legal custodian of L.H.

{¶ 7} Appellant filed his first contempt motion in May 2009, alleging that appellee did not present L.H. for visitation on four separate dates. Three months later, appellee agreed to a finding of contempt. In September 2009, the trial court found appellee in contempt for denying appellant his visitation rights under the agreed entry. The trial court ordered, inter alia, that (1) appellee comply with the February 2, 2009 order, (2) that appellant be entitled to 10 make-up visits totaling 56 hours, and (3) that appellee pay appellant's reasonable attorney's fees totaling $1,164.50, court costs, and guardian ad litem ("GAL") fees.

{¶ 8} On March 18, 2011, appellant filed a motion to show cause alleging appellee once again interfered and denied his visitation rights with L.H and failed to pay his attorney's fees pursuant to the September 2009 order. On that same date, appellant also filed a motion to reallocate parental rights and responsibilities in which he sought an order granting him legal custody of L.H. After evidentiary hearing, the submission of the GAL's report, and written argument, the motion to reallocate parental rights and responsibilities was overruled by entry journalized on December 9, 2011. By the same entry, the trial court overruled the show cause motion as it pertained to the denial of parenting time, but found appellee in contempt for failing to pay appellant's attorney's fees as previously ordered. Appellee was sentenced to 48 hours jail time for contempt, but was given the opportunity to purge the sentence if the attorney's fees were paid in full by a specified date. Ultimately, appellee paid the attorney's fees and avoided jail time.

{¶ 9} Thereafter, the parties executed a new agreed entry defining their parental rights. The agreed entry was approved by the trial court and journalized on January 31, 2012. Under the new agreed entry, appellee remained the residential and custodial parent; however, the parties agreed to the trial court's new standard order of visitation.

{¶ 10} In June 2012, appellant filed an ex-parte motion requesting temporary custody of L.H. In his memorandum in support of the motion, appellant alleged that appellee had been arrested on a charge of child endangering after a burn mark had been discovered on L.H.'s inner thigh. The memorandum included an affidavit from appellant that included numerous other allegations against appellee insinuating that L.H was abused and neglected, that appellee suffered from Munchausen By Proxy syndrome and had been overmedicating the child, and that appellee otherwise had denied his visitation rights since May 20, 2012. The trial court overruled and dismissed the motion noting that children services was actively investigating the claims and could, if appropriate, seek emergency removal of L.H. from appellee's care. The child endangering charge was ultimately dismissed.

{¶ 11} On September 16, 2013, appellant filed a show cause motion against appellee alleging contempt of the agreed parenting entry and a motion to reallocate parental rights and responsibilities seeking to become the residential parent and sole legal custodian of L.H. The motions asserted that appellee had willfully and repeatedly denied his court-ordered visitation time with L.H., including numerous dates between May 20, 2012 and August 9, 2013. The motion to reallocate parental rights and responsibilities also alleged that appellee had on numerous occasions jeopardized the safety and well being of the child. On December 9, 2013, appellant filed a "motion to modify companionship time with minor child as additional relief

sought for defendant's contempt of court" – seeking an order granting him additional visitation time as a remedy for appellee's alleged breach of the agreed parenting entry.

{¶ 12} On July 1, 2014, the GAL filed his report. He noted that L.H "is a very smart and sweet child that is being pulled both ways by her parents." He further observed that "[f]rom an outside perspective it is obvious that both parents are putting pressure on her and that these two parents cannot openly and positively communicate about their daughter." The GAL opined that the parents involved the police and their significant others in the matter "way too much" and that they created "stressful situations" for L.H. Ultimately, the GAL determined that it was in the best interest of L.H. that appellee remain the child's custodial and residential parent. While not entirely clear, the GAL's opinion appears to based on his observations that appellant and his wife may have fabricated allegations of abuse and mistreatment and tried to influence L.H. to lie about these allegations. The GAL also noted that appellant attempted to influence L.H. on where she wished to reside; but ultimately, L.H. expressed a desire to reside with appellee. The GAL also noted that L.H. "stated that she loves both parents and that she is treated fine by both of them."

{¶ 13} On July 7, 2014, appellant filed an "additional motion to show cause" alleging appellee was in contempt of court for violating the agreed parenting entry by denying him visitation on numerous dates between August 23, 2013 and March 7, 2014. On July 10, 2014, appellant filed another "motion to show cause". In addition to the allegations that appellee repeatedly and willfully denied appellant visitation with L.H., this motion also alleged that appellee violated the agreed parenting entry by

> [Failing] to list [appellant] as an Emergency Contact with the minor child's school
>
> records and medical providers, fail[ing] to give [appellant's] name, address, home

and work telephone numbers to the administration and teachers of the school that the minor child attends [and to] medical providers, fail[ing] to provide copies of notices of parent-teacher meetings [and] grade cards, fail[ing] to promptly inform the [appellant] of any illness, injury or condition of the child that requires medical treatment, fail[ing] to encourage frequent communications between the child and the [appellant], has impeded and/or restricted reasonable communication by telephone or email between the minor child and the [appellant], has monitored what communication she did permit, has failed to refrain from criticizing [appellant] in the presence of the minor child, has exceeded her permitted summer extended parenting time of two weeks, which prohibits [appellant] from exercising his permitted four weeks of extended summer parenting time, and has taken said extended summer parenting time when she is NOT away from home during that time as required, has failed to provide sufficient appropriate clean clothing for all parenting time with the [appellee], [and] has failed to pay the GAL deposit * * *.

Although the July 10, 2014 motion was filed on the morning of the last day of the final hearing, the trial court agreed to consider the new allegations. Appellee was offered additional time to gather evidence in defense of the latest allegations but declined the trial court's offer.

{¶ 14} The trial court held multiple hearings on appellant's motion for modification of custody, as well as the pending contempt motions. These hearings were held on March 12, March 13, July 8, July 9, and July 10, 2014. The evidence presented at the hearings revealed that appellee works seasonally, from mid-January to the beginning of May, at Next Star National Talent in Xenia, Ohio. Appellee resides in Sabina, Ohio. She lives with her boyfriend Randy

Reese. Reese is employed at Huhtamaki Corporation in New Vienna, Ohio. The couple has resided together since 2010. Also residing with appellee is L.H. and L.H.'s half-sister R.R. L.H. and R.R. share a bedroom. Appellant currently is employed at Premier Feeds in Sabina working the day shift from 5:30 am to 2:30 pm. He resides in Wilmington, Ohio, with his wife Kimberly Frick, their child J.F., and his grandmother Laura Sexton. At the time of the hearing Kimberly Frick was unemployed but received workers compensation. Appellant and Kimberly were married in June 2012. L.H. has her own bedroom at appellant's residence.

{¶ 15} It was also learned at the hearing that since the latest agreed parenting entry was issued, children services had investigated appellee or her boyfriend on at least three occasions, but did not substantiate any allegations of abuse, neglect, or criminal wrongdoing. In one instance, allegations of physical abuse and unclean living conditions were investigated. After conducting an investigation and safety check at appellee's home, no action was taken by children services. Appellant also reported to the Sabina Police Department in December 2011 alleging that appellee had burned L.H. on her inner thigh with a cigarette lighter. Police charged appellee with one count of endangering children. Appellee denied that she burned L.H. Rather, appellee contended that L.H. was burned when a lamp fell on her while she was with her sister watching a movie. When interviewed by children services, L.H. first indicated that the burn was caused by a lamp but later changed her story and said that appellee had burned her with a lighter. When asked whether she knew the difference between the truth and a lie, L.H. indicated that she did not. Ultimately, it was determined that the charge was unsubstantiated and the charge filed against appellee was dismissed without prejudice. On June 30, 2012, appellant's wife alleged that Randy Reese had sexually abused L.H.. The Sabina Police Department and children services conducted an investigation into the allegations and a medical examination was conducted on

L.H. at Cincinnati Children's Hospital. The exam revealed no physical findings suggestive of sexual assault or abuse. No charges were ever brought against Randy Reese. The Sabina Police Department was also highly involved with the parties' visitation exchanges. Most of the scheduled visitation exchanges took place at the Sabina Police Department. When appellee failed to produce L.H. for visitation, appellant or his wife used the police department to document each violation. On several occasions appellant or his wife requested that the Sabina Police Department conduct a welfare check at appellee's residence.

{¶ 16} Appellee had also contacted the Sabina Police Department on several occasions to report incidents between her and the appellant. The testimony revealed that appellee once called the police to notify them that appellant had spun his tires while leaving her residence following a visitation exchange. Other calls were made alleging that appellant and his wife were stalking and harassing appellee. Near Memorial Day 2013, appellee alleged that appellant had threatened to beat up her boyfriend. In December 2013, appellee called the police and alleged that appellant had trespassed on her property. On another occasion, appellee contacted the Wilmington Police Department to report that L.H. had received a black-eye while under appellant's care. Police were unable to substantiate the allegations; and no charges or arrests resulted from the incidents.

{¶ 17} It was also revealed at the final hearing that on May 24, 2012, appellee filed a petition for domestic violence civil protection order in the Clinton County Common Pleas Court. The petition sought a civil protection order against appellant and in favor of appellee and L.H. The appellee claimed that appellant had swung at her and threatened to kill her in the presence of L.H. Appellee further claimed that appellant threatened to take L.H. and prevent her from ever seeing appellee. That same day, the Clinton County Common Pleas Court issued an *ex parte* civil protection order ("CPO"), but declined to list L.H. as a protected person. Rather, under the

section titled "Parental Rights and Responsibilities Are Temporarily Allocated As Follows", the *ex parte* CPO states that "this Court has no jurisdiction over this issue: Order exists from Highland County Juvenile Court." Ultimately, a civil consent agreement was entered into by the parties and accepted by the Clinton County Common Pleas Court. Under the civil consent agreement, the court made no findings of wrongdoing[3] and the court ordered that the agreed parenting entry filed in Highland County remain in full force and effect.

{¶ 18} Despite the language of the civil consent agreement, appellee denied appellant his court ordered visitation in May and June 2012– including visitation with appellant for a scheduled vacation in June 2012, for his wedding with Mrs. Frick in June 2012, and for Father's Day 2012.

{¶ 19} There was extensive testimony from Kimberly Frick and appellant that on at least 15 occasions between May 2012 and the early part of 2013, L.H. appeared at scheduled visitations with lice in her hair. On each occasion appellant and Kimberly Frick treated the lice in attempts to eradicate the infestation. The couple also washed L.H.'s clothes, bedding, and stuffed animals and informed appellee of the problem. On at least three occasions, either appellant or his wife notified law enforcement of the lice infestation. Kimberly Frick believed that the lice were transmitted to L.H. at appellee's home. Kimberly Frick also testified that L.H. would appear dirty and smelly for visitations and at one visit in September 2012 L.H. appeared to have bed bug bites all over her body. Appellee testified, on the other hand, that L.H. never had bed bug bites but rather had chicken pox in September 2012. She stated that she told appellant about the chicken pox prior to visitation. Appellee also testified that L.H. had lice twice, but believed that

---

[3] We also note that at the final hearing, appellant denied ever threatening appellee as described in the petition for CPO and as testified by appellee at the final hearing.

the lice originated from the elementary school. School officials also testified that L.H. appears clean, well nourished, well dressed, and does not emit an odor at school.

{¶ 20} At the time of the hearing dates L.H. was attending or had just completed kindergarten at Sabina Elementary School. The testimony established that L.H. is doing fine at school. Certified copies of L.H.'s school records were admitted as evidence to show that appellee did not list appellant as L.H.'s father on school records. Appellant contended this was in contempt of the agreed parenting entry. Appellee admitted to listing her boyfriend as L.H.'s father on school records but insisted that she filed the custody papers with the school; and the school was aware that appellant was L.H.'s biological father. Appellee also testified that she provided L.H.'s doctors with the custody papers thus making them aware that appellant was L.H.'s biological father. Eventually, appellant was listed as L.H.'s father and as an emergency contact with the school; but only after appellant initiated contact with the school. Appellee also testified that she did not provide appellant notice of parent-teacher meetings and did not provide him with copies of L.H.'s report card even though the standard parenting plan required her to do so. Appellee claimed that she believed school policy required appellant to personally request the documents from the school.

{¶ 21} At the beginning of the 2013/2014 school year, L.H. began seeing Drew Ireland, the school counselor. L.H. attended weekly sessions with Ireland during the school year. Appellee claimed that L.H. expressed interest in talking with the counselor because she wished to express her feelings to a neutral party. Appellee also claimed that L.H. feared appellant and other men so she thought counseling would be beneficial. In March or April 2014, L.H. also began sessions with Dr. Kennedy, a licensed psychologist from Wilmington, Ohio. Dr. Kennedy was referred to appellee by Ireland. Dr. Kennedy testified at trial that L.H., while bright and

appropriately developed, suffers from high levels of situational anxiety because of conflicts between her parents. Dr. Kennedy also testified that, in his opinion, L.H. does not suffer from parental alienation syndrome. Finally, Dr. Kennedy testified that a change in L.H.'s living arrangements could increase the level of her anxiety and that stability, structure, and predictability would be key to dealing with her anxiety. Appellee admitted that L.H. no longer had a fear of appellant since she re-commenced her regularly scheduled visits with him in March 2014.

{¶ 22} Appellee testified that she denied visitation in May and June 2012 because she feared for her and L.H.'s safety after appellant allegedly threatened to kill her. She also claimed that L.H. had an upper respiratory infection that prevented L.H. from attending appellant's wedding; and that another visit in June 2012 was missed because it was a make-up weekend that she never agreed to. Appellee also admitted to denying visitation the weekends of July 6-8, 2012, and December 14-16, 2012, but could not remember the reasons for the denials. Appellee also denied visitation the weekend of April 5-7, 2013, so that L.H. could be with R.R. for R.R.'s birthday. She claimed that she offered appellant a make-up weekend but he declined her offer. Appellee also admitted to denying visitation on May 3-5, 2013, so that L.H. could attend a family reunion. However, appellee testified that she offered appellant make-up time; but he declined the offer. Appellee also testified that she lets L.H. speak with appellant on the telephone except when she is sleeping or out, or when L.H. does not wish to speak with him. Appellant, on the other hand, testified that appellee repeatedly denied his attempts to reach L.H. by telephone or text message between May 2012 and March 2014. L.H. now has a private telephone line through which she is able to speak with appellant. As of the July hearing dates, appellant had been receiving L.H. since March 2014 for his scheduled visitation.

{¶ 23} The GAL testified that appellant has "been kept in the dark as far as * * * important schooling issues and things like that". The GAL opined that appellant wants to be an involved father but that the parties' lack of communication hinders father's involvement. Nonetheless, the GAL indicated that after listening to the testimony[4] his opinion about the best interests of L.H. had not changed. The GAL found Dr. Kennedy's testimony to be especially compelling.

{¶ 24} Multiple other witnesses testified that L.H. was a happy and jovial child, and seemed to be properly taken care of and fed. It was also established that L.H. interacts well with and is happy around appellant and appellee, as well as extended family members from both sides of her family. The evidence established that both appellant and appellee are caring parents and that their significant others also enjoy spending time with L.H. Officer Olin Mills of the Sabina Police Department testified that appellee's house appears normal, safe, and child appropriate and that appellee and L.H. share a loving bond. Officer Mills also testified that L.H. and her half-sister, R.R., have a good relationship. The GAL testified that appellant's house is appropriate and well kept. Appellant testified that L.H. shares a very loving relationship with J.F., her younger half-brother.

{¶ 25} Clearly, appellant had been deprived of visitation with L.H. Various reasons were offered by appellee for the missed visitation dates. Appellee testified that some visitations were missed for medical reasons or so L.H. could participate in family functions. The testimony also established that appellee refused visitation in May and June 2012, in part because she alleged that appellant threatened her life around that time. Moreover, the parties stipulated that visitation was denied from May 27, 2013 to March 12, 2014.

---

[4] We note that the GAL did not attend the hearing dates in March 2014. However, he attended, participated, and testified at the July 2014 hearing dates. His report was also filed prior to the July 2014 hearing dates.

{¶ 26} Following the final hearing, but prior to the trial court's issuance of its decision and judgment entry, appellant filed a notice of intent to relocate. The filing notified the trial court of appellant's intent to relocate to Trenton, Ohio, by September 1, 2014.

{¶ 27} On August 28, 2014, the trial court issued a decision and judgment entry addressing appellant's request for modification of parenting rights and his contempt motions. In its findings of fact, the trial court addressed several of the incidents that were revealed at the final hearing. For instance, in regards to the child endangering allegation asserted against appellee, the trial court determined that "no credible medical evidence was presented to the Court [indicating that] the mark was in fact a burn or needed to be treated by a medical profession." Rather, the trial court determined that the mark was the result of L.H. and R.R. "rough housing" and "in no way was the result of neglect by the mother." In regards to the lice issue, the trial court noted that children services was notified of the issue several times; and no action was ever taken by the agency. The trial court also questioned the veracity of the alleged length of the lice infestation. The trial court also found that appellee's version of the events leading to the civil consent agreement was credible. The court also stated "[n]o credible evidence was presented[that the bites/marks] were the result of bed bugs, abuse or neglect." Finally, the trial court noted that appellant's allegations of sexual abuse were unsubstantiated and that appellant and Kimberly Frick attempted to manipulate L.H. in their efforts to gain custody of L.H.

{¶ 28} As for appellant's non-visitation allegations of contempt, the trial court noted that: "Although the mother did not volunteer the name of the father to be placed on the school records she did provide the school a copy of the prior orders of this Court."

{¶ 29} Ultimately, the trial court determined that a change in circumstances had occurred as a result of the appellee's willful and continual denial of parenting time for the period May 27,

2013 through March 12, 2014. The trial court also considered all of the relevant statutory best interest factors in determining whether a modification of the parenting order would be appropriate.  The trial court explained its findings on the best interest factors as follows:

[(a) Wishes of the child's parents.] [T]he Court first finds the mother would like to remain residential parent and the father is requesting to be named residential parent.

[(b) The wishes of the child.] The Court was not asked to interview the child. However the child expressed to her Guardian Ad Litem and legal counsel that she wanted to remain with her mother.

[(c) Child's interactions and interrelationship with the child's parents, siblings, and others.] The child interacts well and appropriately with her mother and those who reside with them as well as the mother's extended family. The same is true for her father and his extended family.

[(d) The child's adjustment to their home, school, and community.] The child has adjusted well to the home of her mother and her school, Sabina Elementary. If the father is awarded custody the child would likely be required to change school districts in that he will be relocating to Trenton, Ohio on September 1, 2014.

[(e) Mental and physical health of all persons.] The mental and physical health of both parents appears good and is not an issue.

[(f) Parent more likely to honor and facilitate visitation.] Based on the history of this case the father would more likely honor and facilitate parenting time. However the Court notes that when the father is not reporting the mother to law enforcement, Children Services, threatening to harm the mother or her family and

not displaying anger the mother has honored and facilitated parenting time for the father. The father definitely knows what buttons of the mother to push and the mother needs to do a better job of handling the father's manipulative actions directed towards her.

[(h) Criminal convictions resulting in a child being an abused or neglected child.] Neither parent or member of their household have been convicted or pled guilty to any criminal offense resulting in a child being an abused or neglected child. No factor under either R.C. 3109.04(F)(1)(h) or R.C. 3109.05(D)(11) or (12) applies to this action.

[(i) Denial of parenting time to the other parent.] The mother did continuously and willfully deny the father his parenting time from May 27, 2013 until March 12, 2014. As previously noted the father to a great extent caused his own problems by repeatedly reporting unfounded allegations as well as threatened violence towards the mother and her family.

[(j) Moving out of state.] Neither parent is planning to establish a residence outside the State of Ohio. The parents currently live @ 30 minutes apart but the father has plans to move to Trenton, Ohio, September 1, 2014 which is a greater distance from the residence of the mother.

{¶ 30} While the trial court determined that appellee's interference with appellant's visitation rights constituted a change in circumstance, it nonetheless concluded that it was not in the best interest of L.H. to designate appellant the residential parent. The trial court noted that a change in residential parent would cause L.H. anxiety and that a change would be more harmful than beneficial. With respect to appellant's contempt motions, the trial court determined that

appellee was in contempt for denying appellant visitation for the period May 27, 2013 through March 12, 2014. However, the trial court did not find appellee in contempt for allegedly violating the agreed parenting entry on the other dates listed in the contempt motions or for allegedly failing to include appellant as a contact with L.H.'s educators or medical providers noting that the evidence was "too conflicting and therefore insufficient" to find appellee in willful violation of the court's orders. The trial court also noted that appellee "was confused as to the orders issued" as a result of the civil protection petition filed in May 2012 "and believed [appellant] was not to be in contact with[L.H.] at least for a period of time."

{¶ 31} Appellee was sentenced to the Highland County Justice Center for ten days for her contempt of court, but the jail-time was suspended and she was permitted to purge her contempt if she (1) allows make-up visits; (2) allows appellant an extra week of visitation during the summer of 2015; and (3) pays $300 to appellant for reimbursement of legal fees to prosecute the contempt motions. The parties were also ordered "to pay the court costs assessed to the witnesses they subpoenaed" and to each "pay one-half of the Guardian Ad Litem bill". This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶ 32} Appellant asserts the following assignments of error for review:

First Assignment of Error:

> THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE MANIFEST
> WEIGHT OF THE EVIDENCE, AND THE TRIAL COURT ERRED, IN
> FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT IS NOT IN
> THE BEST INTERESTS OF THE MINOR CHILD, [L.H.], TO DESIGNATE
> APPELLANT RESIDENTIAL PARENT AND THAT TO ORDER SAID
> CHANGE WOULD DO MORE HARM TO THE MINOR CHILD, [L.H.],
> THAN ANY ADVANTAGE TO HER.

Second Assignment of Error:

THE COURT ERRED, AND THE COURT'S ORDER IS AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE, IN FAILING TO REQUIRE
APPELLEE TO PAY ALL OF THE COURT COSTS AND REASONABLE
ATTORNEY FEES ARISING OUT OF THE CONTEMPT PROCEEDINGS
WHEN THE TRIAL COURT DID FIND APPELLEE IN CONTEMPT FOR
THE 3RD TIME DUE TO HER WILLFULLY VIOLATING APPELLANT'S
PARENTING TIME FOR THE PERIOD OF MAY 27, 2013 THROUGH
MARCH 12, 2014.

III. STANDARD OF REVIEW

*A. Custody*

{¶ 33} Generally, "[d]ecisions concerning child custody matters rest within the sound discretion of the trial court." *Eatherton v. Behringer,* 3rd Dist. Seneca No. 13–11–12, 2012–Ohio–1584, ¶ 13, citing *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). "Custody determinations are some of the most difficult and agonizing decisions a trial judge must make, and, therefore, appellate courts must grant wide latitude to their consideration of the evidence." *Id.,* citing *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Ordinarily, "a reviewing court will not reverse a trial court's decision regarding child custody absent an abuse of discretion." *Id.,* citing *Masters v. Masters,* 69 Ohio St.3d 83, 85, 630 N .E.2d 665 (1994). The phrase "abuse of discretion" connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). As this Court has previously explained:

An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but

perversity of will, not the exercise of judgment but defiance thereof, not the

exercise of reason but rather of passion or bias.

*Jones v. Jones,* 4th Dist. Highland No. 06CA25, 2007–Ohio–4255, ¶ 32. According to the

Supreme Court of Ohio, a trial court does not abuse its discretion in the custody context if its

judgment is supported by " 'a substantial amount of credible and competent evidence.' " *Davis* at

418, quoting *Bechtol v. Bechtol,* 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus.

{¶ 34} "While a trial court's discretion in a custody modification proceeding is broad, it is

not absolute, and must be guided by the language set forth in R.C. 3109.04." *Miller* at 74. R.C.

3109.04(E)(1)(a) provides:

> The court shall not modify a prior decree allocating parental rights and
>
> responsibilities for the care of children unless it finds, based on facts that have
>
> arisen since the prior decree or that were unknown to the court at the time of the
>
> prior decree, that a change has occurred in the circumstances of the child, the
>
> child's residential parent, or either of the parents subject to a shared parenting
>
> decree, and that the modification is necessary to serve the best interest of the
>
> child. In applying these standards, the court shall retain the residential parent
>
> designated by the prior decree or the prior shared parenting decree, unless a
>
> modification is in the best interest of the child and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent or both
>
> parents under a shared parenting decree agree to a change in the designation of
>
> residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a

shared parenting decree, has been integrated into the family of the person seeking

to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by

the advantages of the change of environment to the child.

*B. Contempt Sentence*

{¶ 35} The sentence imposed for a finding of contempt is subject to an abuse of

discretion standard of review. *See McDaniel v. McDaniel*, 74 Ohio App.3d 577, 579, 599 N.E.2d

758 (8th Dist.1991). A trial court may exercise its discretion to impose any sanction that is

reasonable in light of the contemptuous conduct. *Id.; Carter v. Carter*, 2nd Dist. Montgomery

Nos. 14409, 14530, 14574, 1994 WL 660811, *14 (Nov. 23, 1994).

IV. LAW AND ANALYSIS

*A. First Assignment of Error*

{¶ 36} In his first assignment of error appellant contends that the judgment of the trial

court is against the manifest weight of the evidence because the court failed to properly analyze

the best interest of the child and the benefits and harms of a modification of parental rights and

responsibilities. While appellant frames his argument under the manifest weight standard, given

our utmost deference to the trial court's factual findings in custody-modification cases, the

applicable standard of review is the more deferential abuse of discretion standard. *See Thebeau v.*

*Thebeau,* 4th Dist. Lawrence No. 07CA34, 2008–Ohio–4751, ¶ 25.

{¶ 37} In the case sub judice, appellant obviously is not challenging the trial court's

finding that a change in circumstance occurred. Therefore, we need not address this part of the

trial court's analysis. Appellant, instead, contends that the trial court made findings contrary to the evidence and gave inappropriate weight to certain witness testimony and to the GAL report when making its best interest finding and its R.C. 3109.04(E)(1)(a)(iii) finding that the harm of the modification outweighs any potential advantages.

{¶ 38} R.C. 3109.04(F)(1)(a)-(j) set forth the factors that a court must consider when determining a child's best interest:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense

involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 39} In this case, the trial court in its decision and judgment entry expressly discussed each relevant factor in R.C. 3109.04(F)(1); and despite appellant's arguments to the contrary, the trial court's findings are well reasoned and are supported by record evidence. For instance, appellant complains that the GAL made no determination as to the up-keep and safety of appellant's home and did not interview Randy Reese; and thus the trial court should not have relied upon his report. However, Officer Mills testified that the home was satisfactory and suitable for children. Moreover Reese testified at the final hearing and was subject to examination from appellant's counsel. Thus, in addition to the GAL report, the trial court had before it substantial and credible evidence to evaluate L.H.'s home situation and living conditions. On a multitude of other factors, appellant cites favorable testimony but ignores or argues that contradictory evidence is not credible. For instance, appellant cites testimony from appellee and Reese that the couple permits L.H. and R.R. to burn candles in their bedroom but ignores testimony from the couple that the candles are out of reach of the children and that they supervise the burning of the candles. Appellant also argues that the trial court ignored complaints of sexual abuse, abuse, neglect, and other allegations brought against either appellee or Reese. However, a tremendous amount of testimony was presented indicating that the claims were

unsubstantiated; and appellee or Reese were never convicted of a crime or found by children services to be unfit. The trial court also commented in its decision and judgment entry that the claims were unsubstantiated and even found that appellant and his wife made certain unfounded allegations in an attempt to manufacture evidence for use in a custody action. The GAL included a similar finding in his report filed with the trial court.

{¶ 40} On other issues where competing testimony exists, appellant contends that appellee's testimony should be discounted because her behavior during cross-examination was "beyond argumentative, as she was laughing one minute, angry and combative with counsel the next, she seemed to cry on demand, and was so explosive that she was yelling at counsel for [appellant] asking counsel questions instead of answering those posed to her." On the other hand, appellant describes his court room demeanor as "calm and consistent * * *[and] completely credible * * *." It is well established, however, that " '[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.' " *Davis*, 77 Ohio St.3d at 419, 674 N.E.2d 1159, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273 (1984). This is so because "the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Id*. at 418. So while the appellant disagrees vehemently with the trial court's credibility determinations, we find that there is simply not enough record evidence to persuade us to abandon the discretion owed to the trial court.

{¶ 41} A large portion of appellant's brief argues that appellee persistently denied visitation in an effort to exclude appellant from L.H.'s life. Appellant argues that such exclusion is against L.H.'s best interests and supports modification of custody. The trial court agreed that

appellee denied appellant's scheduled visitation on certain occasions, but determined that the denials did not rise to the level of parental alienation. The trial court gave substantial weight to Dr. Kennedy's testimony. The trial court also found that the denials to a certain extent were provoked by appellant's actions. Given the record evidence, we cannot say that the trial court's conclusions lack reason or logic.

{¶ 42} Finally, appellant contends that the trial court erroneously considered L.H.'s wishes to live with appellee without first determining her reasoning ability. L.H.'s wish to stay with appellee was expressed in the GAL's report. The GAL's report indicates that L.H. originally stated she wished to live with appellant, but when she was interviewed away from appellant's home she expressed a desire to live with appellee. "[U]nlike R.C. 2151.414(D)(1)(b), which authorizes the guardian ad litem in a juvenile permanent custody hearing to give hearsay testimony about the children's wishes, R.C. 3109.04(F) does not similarly authorize the guardian ad litem in domestic cases to testify about the children's wishes. Instead, R.C. 3109.04(F)(1)(b) provides that the court will ascertain the children's wishes by questioning them directly in camera." *Sypherd v. Sypherd*, 9th Dist. Summit No. 25815, 2012-Ohio-2615, ¶ 13; *see also* R.C. 3109.04(B).

{¶ 43} Here, the trial court's decision and judgment entry expressly states that the court was not asked to interview the child. While the trial court noted that the child expressed to her GAL that she wished to remain with her mother, it is unclear whether the trial court factored that into its best interest analysis. In other words, with the record before us, we cannot determine how much weight the trial court assigned to the R.C. 3109.04(F)(1)(b) factor, if it assigned any weight to it at all. Thus, we cannot affirmatively say that the trial court erred by considering

L.H.'s wishes without first determining her reasoning ability and without first conducting an in camera interview.

{¶ 44} After reviewing the record, we do not agree with appellant that the evidence adduced at the trial court proceeding fails to support the trial court's finding that modification of the parental rights and responsibilities would be against L.H.'s best interest. Rather, the trial court's findings and conclusions appear rational and are supported by substantial, competent, and credible evidence. Moreover, nothing in the record suggests that the trial court failed to engage in a sound reasoning process when it made its best interest finding. Thus, the trial court did not abuse its discretion by denying modification of the prior custody order.

{¶ 45} Because modification of custody would not serve the child's best interest, we need not address appellant's argument that the benefits of modifying custody outweigh any harm. *See Massie v. Sammons*, 4th Dist. Scioto No. 14CA3630, 2014-Ohio-5835, ¶ 30; *Adams v. Adams*, 4th Dist. Washington No. 05CA2, 2005-Ohio-4588, ¶ 15. Accordingly, appellant's first assignment of error is overruled.

*B. Second Assignment of Error*

{¶ 46} In his second assignment of error appellant contends that the trial court erred by failing to order appellee to pay all of the court costs and reasonable attorney's fees arising from the contempt proceedings.

{¶ 47} R.C. 3109.051(K) requires that:

If any person is found in contempt of court for failing to comply with or

interfering with any order or decree granting parenting time rights issued pursuant

to this section or section 3109.12 of the Revised Code or companionship or

visitation rights issued pursuant to this section, section 3109.11 or 3109.12 of the

Revised Code, or any other provision of the Revised Code, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt, and may award reasonable compensatory parenting time or visitation to the person whose right of parenting time or visitation was affected by the failure or interference if such compensatory parenting time or visitation is in the best interest of the child. Any compensatory parenting time or visitation awarded under this division shall be included in an order issued by the court and, to the extent possible, shall be governed by the same terms and conditions as was the parenting time or visitation that was affected by the failure or interference.

{¶ 48} In its decision and judgment entry, the trial court explained its $300 award for attorney's fees as follows:

The Court also recognizes PLAINTIFF'S legal fees likely far exceed the $300 awarded. However DEFENDANT very early in the trial stipulated to denial of parenting time for the period she was found in contempt. The vast majority of PLAINTIFF'S exhibits and testimony was cumulative and unnecessary as it related to the contempt issue. Having presided over thousands of show cause motions two hours would be more than generous for an experienced trial attorney to prosecute the show cause issues before the Court in this action. The Court received no evidence as to the hourly rate or total fee charged PLAINTIFF and has used $150/hour as the "norm" in Highland County.

{¶ 49} In this case, we cannot say that the trial court acted in a manner that is arbitrary, unreasonable, or unconscionable when it limited the attorney fee award to $300 or when it determined the allocation of court costs. Rather, the trial court acted within its inherent authority and discretion in fashioning its punishment for contempt; and did so in a logical manner. We also note that the statute only mandates the assessment of court costs "arising out of the contempt proceeding" and "reasonable" legal fees arising "in relation to the act of contempt." Here, in addition to being repetitive, the majority of the evidence presented related to appellant's motion to reallocate parental rights and responsibilities as opposed to his show cause motions. We also note that appellee was only found in contempt for denying visitation on some of the dates listed in the show cause motions. Appellee was not found to be in contempt for other alleged denials of visitation or for otherwise violating the court's order. Thus, the trial court appropriately limited its award of court costs and attorney's fees in this case. Appellant's second assignment of error is overruled.

## V. CONCLUSION

{¶ 50} Having overruled both of appellant's assignments of error, we affirm the decision of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court

By:_____

      Marie Hoover
      Presiding Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.