# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

ANGEL KULPA,

Plaintiff-Appellant,

v.

CHAD KULPA,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 BE 0010**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 13 DR 449

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Mark A. Hanni, Judges.

**JUDGMENT:**
Affirmed.

*Atty. Marian D. Davidson*, 119 Harrison Street, Lisbon, Ohio 44432, for Plaintiff-Appellant and

*Atty. Joseph A. Vavra*, 132 West Main Street, P.O. Box 430, St. Clairsville, Ohio 43950, for Defendant-Appellee.

Dated:  March 14, 2023

**D'Apolito, P.J.**

{¶1}     Appellant, Angel Kulpa, appeals from the February 23, 2022 judgment of the Belmont County Court of Common Pleas denying her motions for contempt following a hearing.  On appeal, Appellant asserts the trial court abused its discretion in not finding Appellee, Chad Kulpa, in contempt for failing to return the parties' minor child to Appellant for parenting time and for failing to allow telephone calls between the minor child and Appellant despite the manifest weight of the evidence.  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2}     The parties stipulate to the following facts and procedural history.  (8/4/2022 Appellant's Brief, p. 2-4); (10/13/2022 Appellee's Brief, p. 4).  The parties were married on April 15, 2003.  One minor child was born as issue of the marriage, L.K., d.o.b. 10/26/2010.  Thereafter, due to various issues and differences between the parties, Appellant filed a complaint for divorce against Appellee on December 19, 2013.  Appellee filed an answer and counterclaim on January 24, 2014.

{¶3}     A final divorce decree terminating the parties' marriage on the grounds of incompatibility was filed on May 28, 2015.  A nunc pro tunc final divorce decree was filed on March 28, 2016.  Appellant was designated as the primary residential parent and sole legal custodian of the minor child and Appellee was designated as the non-residential parent.

{¶4}     On May 24, 2016, Appellee filed a motion for modification of parental rights and responsibilities and a motion for contempt against Appellant.  The trial court dismissed those motions.  On July 12, 2017, Appellee filed a motion to modify the parenting plan and an ex parte motion for temporary custody.  Following an opportunity to negotiate a resolution, the parties reached an agreement.  On January 16, 2018, a judgment entry of the final shared parenting decree and an amended shared parenting plan were filed.

{¶5}     On July 10, 2019, Appellee filed a petition for termination of the parties' shared parenting plan and reallocation of parental rights and responsibilities.  The parties negotiated an agreement which was memorialized in writing in their agreed judgment

entry for modification of allocation of parental rights filed on April 29, 2021 ("AJE").

**{¶6}** On January 14, 2022, Appellant filed two motions for contempt against Appellee due to his alleged failure to comply with the parties' AJE. The first motion for contempt was premised upon Appellee's denial to provide Appellant mid-week parenting time with the minor child on December 22, 2021, which was dismissed by the trial court. The second motion for contempt was premised upon Appellee's refusal to return the minor child to Appellant for her designated parenting time, commencing December 15, 2021 through December 18, 2021.[1] On February 7, 2022, Appellant filed an additional motion to hold Appellee in contempt premised upon his failure to facilitate phone calls on June 22, 2021, November 23, 2021, December 7, 2021, and February 1, 2022 in accordance with the AJE.

**{¶7}** A hearing was held on February 9, 2022. Appellant appeared pro se and Appellee appeared with counsel.

**{¶8}** Ashley Nicole Burns ("Burns"), an infectious disease investigator with the Belmont County Health Department, testified for Appellant that Appellant tested positive for COVID on December 8, 2021. (2/9/2022 Hearing Tr., p. 6, 9). Burns said she never spoke with Appellee or his wife. (*Id.* at p. 11). Individuals have antibodies 90 days after having COVID. (*Id.*) Burns revealed that if she were asked, she would have advised Appellee to return the minor child to Appellant on December 15, 2021. (*Id.*)

**{¶9}** On cross-examination, Burns testified that her job is not to enforce visitation orders. (*Id.* at p. 13). The CDC guidelines during the time at issue included a ten-day quarantine period from first symptoms. (*Id.* at p. 13, 19). If an individual did not report symptoms, a ten-day quarantine period would be from a positive test. (*Id.* at p. 19). Burns said if Appellee tested positive for COVID on December 11, 2021 and the minor child was in his household at that time, she would have instructed that the minor child quarantine at Appellee's house. (*Id.* at p. 13). Burns noted that in this situation, there is a "gray area" since Appellant had also tested positive for COVID. (*Id.* at p. 14). Burns stated that the Belmont County Sheriff's Department had relayed to her, however, that Appellant was not the only person in her household at the time. (*Id.*) Thus, Burns' instruction would have been for the minor child to stay with Appellee. (*Id.* at p. 14, 16).

---

[1] Appellee filed a request to dismiss the motions for contempt. Appellant filed a response.

**{¶10}** On re-direct, Burns indicated, based on Appellant's return to work slip, that Appellant's symptoms would have started around December 5, 2021, thereby bringing her out of quarantine on December 15, 2021. (*Id.* at p. 21-22; Exhibit G).

**{¶11}** Appellant, a part-time nurse, testified that the minor child never tested positive for COVID. (*Id.* at p. 31, 33). Appellant agreed with the trial judge that in the parties' agreement, Option 1 regarding visitations reveals that both Appellant and Appellee are residential parents. (*Id.* at p. 36). The trial judge also pointed out, to which Appellant agreed, that there is a clause in their agreement "that says that the parties may mutually agree to amend the visitation schedule[.]" (*Id.*) Contrary to the language in the agreement, Appellant said she did not utilize a mediator. (*Id.* at p. 38). Appellant wanted the minor child returned to her and indicated she had learned, through the St. Clairsville Police Department, that Appellee said, "'file a contempt.'" (*Id.* at p. 41). Appellee stated he was "following the guidelines from the health department[.]" (*Id.* at p. 42). Appellant believed Appellee and his attorney were "negative" and "condescending." (*Id.* at p. 46). Appellant said, "I just want [the minor child] put first when it comes to the phone calls." (*Id.* at p. 48).

**{¶12}** On cross-examination, Appellant testified she received an email from Appellee's counsel regarding Option 1 of the parties' agreement regarding visitation and holidays. (*Id.* at p. 52). Appellant said she notified Appellee via email that she was in quarantine on December 8, 2021. (*Id.* at p. 59). Appellant did not report her COVID symptoms to Appellee, which began on December 5, 2021 at the hospital. (*Id.* at p. 62). Appellant agreed that Appellee tested positive for COVID on December 11, 2021. (*Id.* at p. 64). Appellee advised Appellant that he and the minor child did try calling her on a couple occasions and her phone "just rang into voicemail[.]" (*Id.* at p. 72).

**{¶13}** Appellee testified that he believed the minor child was a "carrier" and "gave [COVID] to everybody." (*Id.* at p. 82). Appellee was concerned and did not want the minor child to keep passing COVID "back and forth to everybody[.]" (*Id.* at p. 90). Appellee said the minor child is doing "good" and "amazing" in school. (*Id.* at p. 85). Regarding Option 1, Appellee felt he was "entitled to the Christmas visitation the day after school ended [Friday, December 17.]" (*Id.* at p. 86, 93). In odd years as in 2021, under Option 1, Appellee (father) "has the first part of the Christmas break[.]" (*Id.* at p. 92).

Appellee's visitation time would have started on December 18, 2021 through December 25, 2021 at 2:00 p.m. (*Id.* at p. 93). Appellee returned the minor child to Appellant on December 25, 2021 at 2:00 p.m. (*Id.*)

{¶14} Regarding phone calls, Appellee called Appellant on June 22, 2021 and June 23, 2021 but got "no response," "no answer." (*Id.* at p. 94). On November 23, 2021, Appellee called Appellant outside of the timeframe because Appellee and his wife spent time trying to flush out a metal piece that Appellant's adult son had gotten in his eye from working that day at a steel mill. (*Id.* at p. 95-96). On December 7, 2021, Appellee called Appellant outside of the timeframe because they "were probably busy with the kids and everything." (*Id.* at p. 96-97). On February 1, 2022, Appellee missed calling Appellant because Appellee was tending to his father, who had stomach surgery. (*Id.* at 97). The minor child goes to bed at 9:00 p.m. and Appellee did not realize until "like 9:30, quarter to 10:00" that he forgot to call Appellant. (*Id.* at p. 98). Appellee has "no issues" with Appellant calling outside of the court-ordered hours to talk with the minor child. (*Id.* at p. 99). Appellee "even requested that when [they] went through mediation, like why even have a set time. Just call. You want to talk, just call." (*Id.*)

{¶15} Appellee first found out that Appellant had COVID through the minor child's teacher. (*Id.* at p. 100). Appellee tested positive for COVID on December 11, 2021. (*Id.* at p. 103). Appellee spoke with someone from the health department indicating that the minor child had "to be kept where the last place of contact was [and] had to be quarantined for another ten days." (*Id.* at p. 104-105). Appellee did not believe he was violating the court orders for parenting time based upon his understanding of the COVID guidelines. (*Id.* at p. 109). Appellee said the entire time that the minor child was quarantined at his house, Appellant never inquired as to how he was doing. (*Id.* at p. 110-111).

{¶16} On cross-examination, Appellee testified that Appellant emailed him on December 8, 2021 that the minor child would need to be tested for COVID. (*Id.* at p. 115). Appellee was told by the health department that the minor child was to quarantine at his house. (*Id.* at p. 117). Appellee did not get the minor child tested because he was asymptomatic. (*Id.* at p. 118). Regarding the two late phone calls and the two missed calls, Appellant asked Appellee if he showed her "proof" in the form of call logs to which he responded, "[n]o." (*Id.* at p. 127). Appellee stated, "I didn't see where I would need to

as long as you - - I said I tried to call you twice." (*Id.*) Appellee believed "it was [in] the best interest of everybody to keep [the minor child] where he was at with the information [he] was told [by the health department]." (*Id.* at p. 134).

**{¶17}** On re-direct, Appellee testified his wife spoke with Burns at the health department. (*Id.* at p. 143-144). The trial judge read a December 16, 2021 email from Appellee to Appellant indicating, "'[Ashley Burns at the health department] told us to quarantine where [the minor child] was last exposed because the kids are symptom-free right now and we would just keep passing [COVID] back and forth." (*Id.* at p. 143). Appellee further told Appellant, "'I am not trying to get away with anything. I am not trying to keep [the minor child] from you; we are trying to protect all three of my kids.'" (*Id.*)

**{¶18}** On February 23, 2022, the trial court denied Appellant's motions for contempt against Appellee following the hearing.

**{¶19}** Appellant filed a timely appeal and raises two assignments of error.[2]

## ASSIGNMENT OF ERROR NO. 1

**THE COURT ERRED AND ABUSED ITS DISCRETION BY NOT FINDING THE DEFENDANT/APPELL[EE] IN CONTEMPT FOR HIS WILLFUL FAILURE TO COMPLY WITH THE TRIAL COURT'S JUDGMENT ENTRY, FILED APRIL 29, 2021, REFUSING TO RETURN THE PARTIES' MINOR CHILD TO PLAINTIFF/APPELLANT FOR HER PARENTING TIME, COMMENCING DECEMBER 15, 2021, THROUGH DECEMBER 18, 2021 DESPITE THE MANIFEST WEIGHT OF THE EVIDENCE.**

## ASSIGNMENT OF ERROR NO. 2

**THE COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO FIND THE DEFENDANT/APPELL[EE] IN CONTEMPT FOR HIS WILLFUL FAILURE TO COMPLY WITH THE TRIAL COURT'S JUDGMENT ENTRY, FILED APRIL 29, 2021, FAILING TO ALLOW TELEPHONE BETWEEN THE PARTIES' MINOR CHILD AND PLAINTIFF/APPELLANT ON THE**

---

[2] At issue in this appeal is the second January 14, 2022 motion for contempt and the February 7, 2022 motion for contempt.

Case No. 22 BE 0010

**FOLLOWING DATES: JUNE 22, 2021, FEBRUARY 1, 2022, NOVEMBER 23, 2021, AND DECEMBER 7, 2021, DESPITE THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶20} In her first and second assignments of error, Appellant argues the trial court abused its discretion in failing to find Appellee in contempt with respect to the AJE despite the manifest weight of the evidence. Thus, as Appellant's assignments are interrelated, we will address them together for ease of discussion.

> Contempt is defined as a disregard for or disobedience of an order or command of judicial authority. *First Bank of Marietta v. Mascrete, Inc.*, 125 Ohio App.3d 257, 263, 708 N.E.2d 262 (4th Dist. 1998). Failure to abide by a court order may be indirect contempt, as it occurs outside the presence of the court but demonstrates a lack of respect for the court. *Byron v. Byron*, 10th Dist. No. 03 AP 819, 2014–Ohio–2143 at ¶ 11.

*D.G. v. M.G.G.*, 7th Dist. Mahoning No. 17 MA 0165, 2018-Ohio-5394, ¶ 14.

> The trial court's decision on contempt is not disturbed on appeal unless the appellant can show an abuse of discretion. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991). A court abuses its discretion if the decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable if it is unsupportable by any sound reasoning process. *See AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990) (abuse of discretion review typically involves a determination of whether a decision was unreasonable). "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

*Manley v. Manley*, 7th Dist. Columbiana No. 19 CO 0023, 2020-Ohio-1365, ¶ 43.

Case No. 22 BE 0010

**{¶21}** An abuse of discretion standard is also applied by appellate courts in reviewing matters involving shared parenting plans. *See Patrick v. Patrick*, 7th Dist. Carroll No. 17 CA 0913, 2017-Ohio-9380, ¶ 21.

**{¶22}** The manifest weight standard in a civil case is the same as it is in a criminal matter. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. The Supreme Court of Ohio has explained:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered * * * to support one side of the issue rather than the other. It indicates clearly to the [trier of fact] that the party having the burden of proof will be entitled to their verdict [or decision], if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis sic.) *Id.* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

*KB Resources, LLC v. Patriot Energy Partners, LLC,* 7th Dist. Columbiana No. 17 CO 0002, 2018-Ohio-2771, ¶ 60.

**{¶23}** Appellant's first argument centers on whether the trial court abused its discretion in finding that Appellee was not in contempt for failing to provide Appellant with three days of parenting time from December 15, 2021 through December 18, 2021. Appellant alleges there was no emergency situation to justify the missed time and stresses that Appellee was uncooperative.

**{¶24}** Appellant is a registered nurse. As such, Appellant maintains she "is very familiar with the care and treatment of [the minor child], and attending to his special needs." (8/4/2022 Appellant's Brief, p. 5). Appellee is a police officer. Appellant claims that Appellee used his position with the St. Clairsville Police Department where he "has frequently exploited the Parties' AJE and systematically maneuvered Appellant into a compromised position with regard to caring for the Parties' minor child[.]" (*Id.* at p. 5, 10).

**{¶25}** Regarding Appellant's claim that Appellee is employed by the St. Clairsville Police Department, Appellee states that "Appellant appears to point this out to indicate

that Appellee had some influence over the St. Clairsville Police Officer that was present at the time." (10/13/2022 Appellee's Brief, p. 6). Appellee stresses, however, that "[i]t must be pointed out that Appellee was not employed by the St. Clairsville Police Department at the time in question, or at any other time pertinent to these proceedings." (*Id.*) Appellee states he "has been employed by the Belmont County Sheriff's Department, the Monroe County Sheriff's Department and most recently, the Richland Township Police Department." (*Id.*) Appellee posits that "Appellant's brief arguing otherwise is untrue." (*Id.*)

{¶26} Appellant points this court's attention to the parties' AJE, specifically "Branch One and Branch Two," "The Parties Shall Continue to Exercise Shared Parenting," and the subheading "Cooperation Between the Parties":

> 1. In the exercise of their obligations and duties, the parents shall use Wizard to discuss and cooperate on matters affecting [the minor child's] day-to-day life, including schooling, religion, and medical needs as well as other such matters affecting his health and welfare, acknowledging that [the minor child's] general well-being is of paramount importance and the parties shall abide by the spirit of this Plan as well as its written provisions to ensure that [the minor child's] best interests remain both of their priorities.

> 2. The parents will inform each other <u>as soon as possible</u> about all of the child's school, medical, and other activity schedules to ensure nothing interferes with the child's participation. (Emphasis added)

(4/29/2021 AJE, p. 2-3).

{¶27} Appellant also points our focus to the "Shared Decision Making" clause contained in the parties' AJE:

> Recognizing that [the minor child] has special needs both physically and scholastically, each parent shall consult with the other parent regarding major decisions affecting [the minor child] including but not limited to Education, Medical, Dental, Eye Care, Child Care, Discipline, as well as School and After School Activities. The parties recognize that there will be

occasions when they will disagree. The parties acknowledge that joint-decision is the foundation of shared parenting. The parents recognize that it is vital to the child's welfare that they consult with each other prior to making decisions affecting any of the child's general welfare with the exception of day-to-day decisions which would routinely be made by the parent who has the child.

Those areas in which the parents shall consult, include, but are not limited to, choices of non-emergency medical treatment, medical treatment, medical insurance coverage, schooling and serious discipline, and other major decisions affecting the child's welfare. The purpose of prior consultation is to allow the parents to make mutually agreeable decisions in these areas. In the event they are unable to reach an agreement, they shall submit the issue to a mediator of their mutual choice, or if they cannot agree, to the Belmont County Mediator. In the event of a medical or non-medical emergency requiring immediate response before consultation is possible, the parent who has the child shall notify the other parent of the emergency, the child's status, locale and any other pertinent information as soon as practical, but in any event, within 24 hours.

(4/29/2021 AJE, p. 4).

**{¶28}** Lastly, Appellant points this court to the trial court's "Findings of Fact" in its February 23, 2022 judgment entry:

1. [Appellee] received [the minor child] for his parenting time on December 5, 2021.

2. [Appellant] was entitled to have [the minor child] for her parenting time on December 12, 2021.

3. On December 8, 2021, [the minor child's] school notified [Appellee] that [Appellant] had tested positive for COVID.

4. [Appellant] would have been entitled to receive [the minor child] on December 12, 2021, except for the fact that, on December 8th, [the minor child's] school advised [Appellee] that [Appellant] tested positive for COVID. [Appellee] admitted that he failed to take immediate notice of [Appellant's] December 8th E-mail, but that he subsequently responded by E-mail on December 8th, wherein he questioned the vagueness and lack of pertinent information provided by [Appellant] (failed to notify of the onslaught of symptoms.)

5. On December 11, 2021, [Appellee] tested positive for COVID.

6. [Appellee], after becoming sick and testing positive on December 11, 2021, requested his Attorney, Joseph Vavra, to notify [Appellant], based upon information he received from the CDC (Cleveland Office) and the Belmont County Health Department, that [the minor child] would have to quarantine for ten (10) days from December 11th through December 21st, which would lead into [Appellee's] holiday time (December 18th), pursuant to Option I of Belmont County Visitation Schedule.

7. On December 12, 2021, [Appellant] questioned if [the minor child] was tested, but received no reply. [Appellee] testified that [the minor child] had no symptoms and he chose not to subject him to a test.

8. Although [Appellee] advised, in a December 16th E-mail, that he spoke to Ashley [Burns] at the Health Department (Ashley testified he did not speak to her). [Appellee] further testified that his wife actually called and also prepared the E-mail and that the decision to continue the quarantine was based on the fact that [the minor child's] siblings were also exposed and were symptom-free and that continued quarantine was necessary to protect all three children as well as preventing the passing of COVID to others.

9. Ashley Burns testified that [Appellant] would have had antibodies for up

to ninety days after quarantine, but also admitted on cross-examination that the decision to quarantine from ten days from first symptoms or ten days from the positive test was "a gray area" and depended upon the evaluation of additional information for a correct decision, including other potential family members and/or others who may have come into contact with the infected person.

(2/23/2022 Judgment Entry, p. 3-4).

**{¶29}** The record establishes that the CDC guidelines during the time period at issue dictated a ten-day quarantine period due to COVID symptoms and exposure. Appellant herself acknowledged that she had tested positive for COVID on or about December 8, 2021. At that time, the minor child was in Appellee's physical custody. Thereafter, Appellee tested positive for COVID on or about December 11, 2021. The minor child was still in Appellee's physical custody. Appellee followed the directives of the CDC, as revealed through Burns with the Belmont County Health Department, by keeping the minor child under quarantine with him instead of returning the minor child to Appellant on December 15, 2021.

**{¶30}** Appellant cites to paragraphs one through nine of the trial court's "Findings of Fact" contained in its February 23, 2022 judgment entry, as addressed above. (8/4/2022 Appellant's Brief, p. 7-9). However, Appellant fails to refer to paragraph 11, which states:

The Agreed Modification of Parenting Allocation at paragraph "Shared Decision Making" at Subparagraph 5, states that Mother shall have the final say regarding medical procedures. The Paragraph titled "Changes in Parenting Plan Arrangements" Subparagraph 2 on Page 7, requires, in emergencies, that the parent with custody of the child at the time of the emergency does not require advance agreement with the other parent to make the change. The Court finds this situation constituted an emergency, that Defendant had custody, that Defendant's decision to retain custody was in accord with the terms of the Agreed Entry and was based upon the best interests of [the minor child] and the best interest of other persons in his

household who were subject to COVID infection, as well as other potential persons in Mother's household.

(2/23/2022 Judgment Entry, p. 4).

**{¶31}** Appellant also fails to point out that the trial court, in an apparent attempt to make up for the three missed days in December 2021, awarded her an additional week of compensatory parenting time with the minor child. Specifically, in the final paragraph of the trial court's "Conclusions of Law" contained in its February 23, 2022 judgment entry, the court stated:

Although the parties utilized the Wizard Application to provide information and to discuss and attempt to cooperate on matters affecting [the minor child's] day-to-day life, in accord with Paragraph 1 on Page 3, of the Agreed Entry, the Court finds that each party, because of their failure to conduct a civil conversation with each other (contrary to the language and spirit of the Agreed Entry), failed to provide the necessary exchange of information to allow for a reasonable decision that would have resolved the "emergency" issues for [the minor child's] best interest at a time when fear of the spread of COVID to [the minor child] was a genuine concern, and also allow for necessary protection for the family members of each household, while at the same time, to provide for appropriate make-up time for [Appellant] for her loss of time with [the minor child] during the holiday season. For this reason, the Court, in accord with its inherent power to enforce its Decrees, has awarded [Appellant] an additional week of Compensatory Parenting Time and Ordered each party to pay their own costs and/or attorney fees. Davis v. Davis, 55 Ohio App.3d 196.

(2/23/2022 Judgment Entry, p. 7).

**{¶32}** Appellant's second argument centers on whether the trial court abused its discretion in finding that Appellee was not in contempt for failing to allow telephone contact between Appellant and the minor child on June 22, 2021, February 1, 2022, November 23, 2021, and December 7, 2021.

Case No. 22 BE 0010

**{¶33}** In paragraph 12 of the trial court's "Findings of Fact" contained in its February 23, 2022 judgment entry, the court specifically addressed the telephone calls in question:

> In regard to the issue pertaining to missed phone calls on June 22nd and November 23, 2021, and/or late phone calls on December 7, 2021, and February 1, 2022, filed by [Appellant] on February 1, 2022, the Court finds as follows: [Appellee] testified that [the minor child] made the call on June 22nd with no response and that on November 23, 2021, [Appellee] unavoidably failed to have [the minor child] call, due to he and his wife rendering medical treatment to [Appellant's] other adult child (flushing substance from his eye). [Appellant] has simply failed to prove, by clear and convincing evidence, that [Appellee] knowingly failed to provide [the minor child's] phone calls on each of those dates. The Court further finds that [Appellee's] failure to provide those calls was, at most, inadvertent. In regard to the late calls, the Court finds [Appellant] has failed to prove, by clear and convincing evidence, a pattern of behavior by [Appellee], which would otherwise constitute a violation of the language contained in "Parent Calling Child" on Page 7 of the Agreed Modification Entry, which would result in a contempt violation.

(2/23/2022 Judgment Entry, p. 4-5).

**{¶34}** The December 7, 2021 and February 1, 2022 phone calls did take place, albeit slightly outside the timeframe set forth in the trial court's orders. Although the June 22, 2021 and November 23, 2021 calls did not take place, the trial court did not abuse its discretion in accepting Appellee's explanations due to the extraordinary circumstances presented. The inadvertent nature surrounding these calls did not rise to the level necessary to prove contempt.

**{¶35}** Based on the facts presented, the trial court's decision does not go against the manifest weight of the evidence. The court had more than adequate facts and sufficient testimony, as delineated above and in its judgment, to deny Appellant's motions for contempt. Regarding the missed parenting time from December 15, 2021 through

December 18, 2021, the record establishes that Appellee relied upon the CDC COVID guidelines as indicated to him by the Belmont County Health Department. The trial court did not abuse its discretion in accepting Appellee's explanation, noting the best interest standard and the primary concern for the minor child's health. In an apparent attempt to make up for the three missed days, the trial court awarded Appellant an additional week of compensatory parenting time with the minor child. With respect to the phone calls, the record reveals the trial court also did not abuse its discretion in finding Appellee's actions to be at most, inadvertent, due to the extraordinary circumstances at issue in this case, as addressed.

{¶36} Appellant's first and second assignments of error are without merit.

## CONCLUSION

{¶37} For the foregoing reasons, Appellant's assignments of error are not well-taken. The February 23, 2022 judgment of the Belmont County Court of Common Pleas denying Appellant's motions for contempt against Appellee following a hearing is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 22 BE 0010

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**