[Cite as *SandiCare, L.L.C. v. Wilson*, 2017-Ohio-7596.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SANDICARE, LLC

    Appellant

    v.

WANDA G. WILSON

    Appellee

C.A. No.     28306

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2015-09-4618

DECISION AND JOURNAL ENTRY

Dated: September 13, 2017

---

CARR, Judge.

{¶1}    Appellant, SandiCare, LLC, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    This matter arises out of dispute between SandiCare, a home care provider, and its former employee, Wanda Wilson. As a condition of her employment with SandiCare, Ms. Wilson signed a non-complete agreement that stated she could not directly or indirectly compete with SandiCare or encourage the transfer of client services from SandiCare. The non-compete agreement was drafted to remain in effect for a period of 10 years within a 200 mile radius of Akron, Ohio. The agreement also contained a liquidated damages clause. SandiCare terminated Ms. Wilson after just a few months on the job.

{¶3}    On September 29, 2015, SandiCare filed a complaint against Ms. Wilson for breach of contract, tortious interference with business relations, and a permanent injunction,

alleging that she had violated the terms of the non-compete agreement. The trial court issued a preliminary injunction that prevented Wilson from working in any capacity for a current or past client of SandiCare. When Ms. Wilson did not file an answer to the complaint, SandiCare filed a motion for default judgment. The trial court granted the motion and scheduled a hearing before a magistrate on the issue of damages. Ms. Wilson did not appear at the damages hearing. The magistrate found that the substance of the liquidated damages clause to be unconscionable and determined that the appropriate amount of damages was $45,744.40, plus statutory interest. The magistrate further found that Wilson should be permanently enjoined from working for client JoAnne Harper and her daughter.

{¶4} The parties did not file objections to the magistrate's decision. On January 20, 2016, the trial court issued a judgment entry independently adopting the magistrate's decision. In addition to granting judgment to SandiCare in the amount of $45,744.40, plus statutory interest, the trial court issued a permanent injunction, "whereby Ms. Wilson [was] permanently enjoined from working in any capacity for the client JoAnne Harper and/or her daughter or any agency or individual that is a current or past client of SandiCare, LLC or by soliciting or otherwise encouraging the termination or transfer of client services from SandiCare, LLC."

{¶5} On April 15, 2016, SandiCare filed a motion to show cause, asking that the trial court require Ms. Wilson and JoAnne Harper, a nonparty, to explain why they should not be held in contempt for refusing to comply with the January 20, 2016 order. SandiCare and Harper appeared for a hearing where Harper orally moved the trial court to dismiss the contempt motion. The trial court continued the matter on the written motion filed by Wilson. With respect to the motion to dismiss, the trial court ordered SandiCare and Harper to brief the issue. SandiCare filed a brief arguing that both Wilson and Harper should be held in contempt. Harper responded

with a brief in opposition, and SandiCare replied thereto. The underlying matter proceeded to an evidentiary hearing where both Wilson and Harper appeared and testified before the trial court. On July 7, 2017, the trial court issued an order denying the motion for contempt.

{¶6} On appeal, SandiCare raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT FAILED TO ENFORCE ITS PRIOR ORDER REGARDING THE PERMANENT INJUNCTION AGAINST WANDA WILSON.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD TO JOANNE HARPER IN CONTEMPT.

{¶7} Though SandiCare couches its assignments of error in terms of legal error, the substantive arguments set forth in SandiCare's merit brief posit that the trial court abused its discretion when it failed to hold Wilson and Harper in contempt. This Court disagrees.

{¶8} This Court has previously emphasized that "an appellate court will not reverse a trial court's decision in a contempt proceeding absent a showing of an abuse of discretion." *Musci v. Musci*, 9th Dist. Summit No. 23088, 2006-Ohio-5882, ¶ 33, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981). An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**Discussion**

**{¶9}** The evidence presented at the contempt hearing revealed that SandiCare and Wilson were involved in a multifarious relationship with Harper and her family. Harper's adult daughter, A.H., qualified for benefits from the Summit Developmental Disabilities Board ("the Board"). A.H. entered into an Independent Service Plan ("ISP") with the Board that was designed to address a variety of physical and mental needs. Harper explained during her testimony that while she attends meetings with A.H. and helps her complete forms, A.H. has never been adjudicated incompetent and she serves as her own legal guardian. The Board contracted with SandiCare to carry out the ISP. Pursuant to the ISP, Wilson worked with A.H. on a variety of basic living skills from June to August in 2015. Harper stressed she never paid Wilson or SandiCare for her work as it related to A.H. because those payments were made by the Board.

**{¶10}** Harper learned in September 2015 that Wilson had been terminated from SandiCare. Harper described an incident immediately after Wilson had been terminated where SandiCare's owner, Delphenia Gilbert, brought A.H. back to the Harper residence. When Wilson answered the door, Gilbert contacted Harper because she was not comfortable leaving A.H. in the care of a former SandiCare employee. Harper responded with a text that read, "I, Jo[Anne] Harper, [A.H.'s] mother, give you permission to leave [A.H.] with Ms. Wilson." At the hearing, Harper explained that she was out of town and her oldest son was looking after A.H. Wilson was actually hired to take care of Harper's grandchildren while Harper was out of town. Harper described another event that occurred the same month that ultimately led to the end of A.H.'s arrangement with SandiCare. When A.H. expressed an interest in attending Bible Study, the Board reached out to SandiCare to inquire about amending A.H.'s program. According to

Harper, Gilbert indicated that an amendment of that nature was unacceptable and that SandiCare would no longer be providing services to A.H. SandiCare initiated its lawsuit against Wilson around that time.

{¶11} Thereafter, Wilson went to the Harper residence twice a week to help care for Harper's grandchildren. Wilson assisted the Harpers in that capacity until May 2016. Harper compensated Wilson with "in-kind" payments such as giving her clothes and shoes and helping her with car rides to doctor's appointments. Harper also gave Wilson $10 per month so that Wilson could continue to use her TracFone. Harper was adamant during her testimony that she did not know anything about a court order that prohibited Wilson from working for the Harper family, despite the fact that counsel for SandiCare attempted to communicate with her on multiple occasions. Though Harper acknowledged that she was aware that SandiCare had filed a lawsuit against Wilson, Harper remained steadfast in her position that she knew nothing about a temporary or permanent injunction. While Wilson admitted that she was aware of the injunction, she testified that she "disconnected [herself] totally from [A.H.]" after SandiCare filed the lawsuit. When pressed on the issue, Wilson maintained that her focus was the grandchildren and that she had "no communications whatsoever" with A.H. Nevertheless, during a particularly hectic exchange at the end of the hearing, Wilson expressed fear that she would be jailed for "contempt" because she had worked for Harper.

{¶12} In its journal entry denying the motion for contempt, the trial court stated that while Wilson was "technically in contempt" of the permanent injunction, "it has always been this Court's intent to prohibit her from providing home healthcare/support aide services to the Harpers/[A.H.] of a similar nature that SandiCare provided." The trial court found that Harper and Wilson credibly testified that any work Wilson performed subsequent to her employment

with SandiCare was limited to caring for the grandchildren. The trial court concluded that the work Wilson provided to the Harpers from August 2015 to April 2016 was "clearly not home healthcare/support aide for [A.H.]." Furthermore, with respect to whether Harper should be held in contempt, the trial court concluded that she was not served with the permanent injunction and had no independent knowledge of the injunction. Because the trial court found that neither Wilson nor Harper's actions were in willful contempt of the permanent injunction, the trial court denied SandiCare's motion for contempt.

{¶13} On appeal, SandiCare argues that the trial court abused its discretion by declining to hold Wilson in contempt because she admitted to doing work for the Harpers and the court's prior order prohibited Wilson from working for Harper in any capacity. SandiCare further argues that the trial court abused its discretion by failing to hold Harper in contempt because she had actual knowledge of the permanent injunction and worked in concert with Wilson to defy the court's order.

{¶14} After carefully reviewing the record, we cannot say that the trial court abused its discretion by denying the motion for contempt. In regard to Ms. Harper, the trial court found her testimony that she was unaware of the injunction to be credible. While Harper faced rigorous cross-examination on this point, we are mindful that the trial court was in the best position to evaluate the credibility of the witness and make a factual determination. *Bd. of Twp. Trustees v. Ross.*, 9th Dist. Wayne No. 2624, 1991 WL 172422, *1 (Sept. 4, 1991). Furthermore, with respect to Wilson, we are mindful that SandiCare's complaint against Wilson focused solely on Wilson's former employment as a home care provider and the non-compete agreement. That complaint ultimately gave rise to the injunctive relief that SandiCare later sought to enforce when it filed its motion for contempt. The trial court denied the motion for contempt on the

basis that the work Wilson performed for the Harpers consisted primarily of taking care of the two grandchildren, in addition to performing miscellaneous cooking and cleaning duties, and had nothing to do with providing home care services. Recognizing that the underlying action which gave rise to the injunction centered on Wilson's professional relationship with SandiCare, the trial court did not abuse its discretion by concluding that Wilson was not in contempt. "This Court has held that, '[if] contempt proceedings are invoked solely by the person aggrieved by disobedience of the court's order, a refusal to punish for contempt is largely within the discretion of the trial court * * *.'" *Akin v. Akin*, 9th Dist. Summit Nos. 25524, 25543, 2011-Ohio-2765, ¶ 44, quoting *Thomarios v. Thomarios*, 9th Dist. Summit No. 14232, 1999 WL 1777, *2 (Jan. 10, 1990). Under these circumstances, the trial court was not unreasonable, arbitrary, or unconscionable in its ruling.

{¶15} In light of the foregoing, the first and second assignments of error are overruled.

III.

{¶16} SandiCare's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

EDWARD L. GILBERT, Attorney at Law, for Appellant.

CHARLES TYLER, SR., Attorney at Law, for Appellee.