[Cite as *Slosser v. Supance*, 2023-Ohio-3437.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Anthony Slosser,                                    :

      Plaintiff-Appellant,                        :

                               No. 22AP-693

v.                                                 :          (C.P.C. No. 13JU-12252)

Alicia C. Supance et al.,                          :          (REGULAR CALENDAR)

      Defendants-Appellees.                       :

D E C I S I O N

Rendered on September 26, 2023

**On brief:** *Dougherty, Hanneman & Piccin, LLC*, and *Douglas B. Dougherty*, for appellant. **Argued:** *Douglas B. Dougherty*.

**On brief:** *Jessica M. Wood*, for appellees. **Argued:** *Jessica M. Wood*.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Anthony Slosser ("Father"), appeals from the October 12, 2022 decision and judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which overruled in part and sustained in part Father's objections and adopted with modifications the magistrate's January 18, 2022 decision. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Father and defendant-appellee, Alicia C. Supance ("Mother"), who never married, are the parents of one minor child. On July 24, 2018, the parties filed a shared

parenting plan ("SPP") allocating their parental rights and responsibilities.[1]  In a "Shared Parenting Decree" issued January 7, 2019 with an effective date of July 24, 2018, the trial court adopted the SPP.

{¶ 3}  On July 7, 2020, Mother filed a motion requesting appointment of a parenting coordinator to assist with interpretation and implementation of the SPP.  On September 15, 2020 and March 26, 2021, Mother filed motions to show cause why Father should not be held in contempt for failure to comply with various provisions of the SPP. The September 15, 2020 motion alleged Father violated provisions related to summer parenting time in August 2020, providing notice of summer vacation in April 2020, and failure to pay 50 percent of outstanding medical expenses for 2015 and 2019.  The March 26, 2021 motion alleged Father failed to comply with SPP provisions regarding parenting time during the 2020 Thanksgiving school break, and he failed to follow advice provided by the child's physician following an injury sustained by the child in March 2020.

{¶ 4}  On October 14 and December 22, 2020, Father filed motions to show cause why Mother should not be held in contempt for violating certain provisions of the SPP.  The October 14, 2020 motion alleged Mother breached provisions regarding parenting time in late summer 2020, telephone communication with the child, and decision making regarding the child's medical appointments.  The December 22, 2020 motion alleged Mother violated provisions regarding parenting time in December 2020.

{¶ 5}  In each of their contempt motions, the parties requested the opposing party pay the attorney fees and court costs incurred in filing the motions. On April 8, 2021, Father filed a motion requesting an award of attorney fees incurred in responding to Mother's two contempt motions.  Subsequently, the parties' attorneys filed affidavits in support of their respective clients' requests for attorney fees.

{¶ 6}  A magistrate conducted a trial on the five motions on April 15 and September 8, 2021.  Both Father and Mother testified at the trial, and several exhibits were entered into evidence; no other witnesses testified.  At the magistrate's direction, both parties submitted written closing arguments.  In a decision filed January 18, 2022, the magistrate recommended the court deny all five motions filed by the parties, find each party responsible for their own attorney fees, and assess costs equally to the parties.  Pursuant to

---

[1] The July 24, 2018 SPP replaced a previously filed SPP.

Father's request filed January 25, 2022, the magistrate issued additional findings of fact and conclusions of law on March 17, 2022. The additional findings of fact and conclusions of law more fully explained, but did not substantively alter, the magistrate's January 18, 2022 decision.

{¶ 7} On January 27, 2022, Father filed seven objections to the magistrate's decision. In his first objection, Father argued the magistrate erred by failing to find Mother in contempt for violating his parenting rights in late summer 2020. In his second and third objections, Father contended the magistrate erred by failing to find Mother in contempt for failing to consult with him regarding the child's medical appointments. In his fourth objection, Father maintained the magistrate erred by failing to find Mother in contempt for violating his parenting time rights in December 2020. In his fifth objection, Father claimed the magistrate erred by failing to grant his request for compensatory parenting time resulting from Mother's interference with his parenting time in late summer 2020 and December 2020. In his sixth and seventh objections, Father asserted the magistrate erred by failing to order Mother to pay attorney fees he incurred both in prosecuting Mother's contempt motions and in defending against Mother's motions for contempt and for a parenting coordinator. In addition to the objections, Father noted he would be ordering a transcript of the trial before the magistrate and requested permission to file a supplemental memorandum after he obtained the transcript.

{¶ 8} On February 9, 2022, Father filed a corrected version of his objections.[2] On February 24, 2022, he filed a transcript of the trial before the magistrate. On March 8, 2022, the trial court issued an agreed entry providing Father until March 23, 2022 to file a supplemental memorandum in support of his objections. The agreed entry also set forth deadlines for Mother to file a response to Father's supplemental memorandum and for Father to file a reply to any response filed by Mother. In accordance with the agreed entry, Father, on March 23, 2022, filed a supplemental memorandum in support of his objections, which included more extensive arguments and citations to the trial transcript.

{¶ 9} Mother filed a memorandum contra to Father's objections on April 11, 2022. Father replied to Mother's memorandum contra on April 21, 2022. Also on April 21, 2022,

---

[2] Father's February 9, 2022 filing simply corrected a date included in paragraph one of his January 27, 2022 filing.

Father filed his own affidavit in support of his request for attorney fees. Therein, Father sought reimbursement from Mother for the entire cost of the transcript he filed in support of his objections to the magistrate's decision.

{¶ 10} The trial court held a non-evidentiary oral hearing on May 3, 2022, at which Father appeared pro se and Mother appeared with counsel. Thereafter, on October 12, 2022, the trial court issued a decision and judgment entry which overruled in part and sustained in part Father's objections and adopted with modifications the magistrate's January 18, 2022 decision. The trial court sustained Father's objections regarding Mother's interference with his parenting rights in late summer 2020 and the magistrate's related failure to grant him compensatory parenting time for that three-day period. The trial court overruled the remainder of Father's objections.

{¶ 11} Having found Mother in contempt for interfering with Father's parenting time rights in late summer 2020, the trial court sentenced Mother to 30 days in jail, suspended on condition that she purge the contempt by: (1) providing Father with three days of make-up parenting time before the end of 2022, (2) paying Father $1,500 in attorney fees within 30 days of the filing of the court's decision, and (3) paying Father $1,000 in costs and expenses related to transcript preparation within 60 days of the court's decision.

## II. Assignments of Error

{¶ 12} Father has filed a timely notice of appeal and assigns the following three assignments of error for our review:

> I. The trial court erred when it concluded that mother presented sufficient evidence to establish the defense of impossibility regarding her denial of father's parenting time on December 19 and 20 in 2020.
>
> II. The trial court erred when it failed to hold mother in contempt regarding mother's denial of father's parenting time on December 19 and 20 in 2020.
>
> III. The trial court erred when it failed to order mother to reimburse father for the full cost of the transcript.

### III. Analysis

**{¶ 13}** Father's first and second assignments of error are related and will be discussed together. In them, Father contends the trial court abused its discretion by failing to find Mother in contempt for violating the terms of the SPP pertaining to his weekend parenting time rights on December 19 and 20, 2020 upon findings that Mother offered him a reasonable alternative for exercising his parenting time and that she successfully established the defense of impossibility.

**{¶ 14}** Generally, R.C. 2705.02(A) provides that a person may be punished by contempt for "[d]isobedence of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer." This court has defined contempt as " 'a disregard of, or disobedience to, an order or command of judicial authority.' " *Rife v. Rife*, 10th Dist. No. 11AP-427, 2012-Ohio-949, ¶ 9, quoting *Wesley v. Wesley*, 10th Dist. No. 07AP-206, 2007-Ohio-7006, ¶ 10, citing *Sansom v. Sansom*, 10th Dist. No. 05AP-645, 2006-Ohio-3909.

**{¶ 15}** Specifically applicable here, R.C. 2705.031(B)(2) authorizes any person who has rights under a parenting time or visitation order or decree to "initiate a contempt action for a failure to comply with, or an interference with, the order or decree." R.C. 2705.031(E) provides that the court "shall have jurisdiction to make a finding of contempt for a failure to comply with, or an interference with, a parenting time or visitation order or decree and to impose the penalties set forth in [R.C. 2705.05] in all cases in which the failure or interference is at issue even if the parenting time or visitation order or decree no longer is in effect." "Generally, contempt proceedings in domestic relations matters are civil in nature as their purpose is to encourage compliance with the court's orders." *Wehrle v. Wehrle*, 10th Dist. No. 12AP-386, 2013-Ohio-81, ¶ 55, citing *Byron v. Byron*, 10th Dist. No. 03AP-819, 2004-Ohio-2143, ¶ 12. We review a trial court's decision whether to find a party in contempt under an abuse of discretion standard. *Williams v. Williams*, 10th Dist. No. 15AP-739, 2016-Ohio-3344, ¶ 18, citing *Williamson v. Cooke*, 10th Dist. No. 05AP-936, 2007-Ohio-493. "The term abuse of discretion * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Internal quotations and citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} " '[I]n a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party has violated an order of the court.' " *Rife* at ¶ 10, quoting *Hopson v. Hopson*, 10th Dist. No. 04AP-1349, 2005-Ohio-6468, ¶ 19, citing *Allen v. Allen*, 10th Dist. No. 02AP-768, 2003-Ohio-954, ¶ 16. " ' "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." ' " *In re P.P.*, 10th Dist. No. 13AP-140, 2013-Ohio-4988, ¶ 19, quoting *Gueth v. Gueth*, 10th Dist. No. 09AP-426, 2009-Ohio-6666, ¶ 8, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 17} "Once the movant has met his or her burden, the burden shifts to the other party to either rebut the showing of contempt or demonstrate an affirmative defense by a preponderance of the evidence." *Wehrle* at ¶ 56, citing *Hopson* at ¶ 19, citing *Allen* at ¶ 16, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 140 (1984). " '[G]enerally, impossibility of performance is a valid defense against a contempt charge.' " *P.P.* at ¶ 21, quoting *McDade v. McDade*, 10th Dist. No. 89AP-991 (Sept. 27, 1990). "Impossibility of performance occurs when an unforeseen event arises that renders a party's performance of an obligation impossible." *Gauthier v. Gauthier*, 12th Dist. No. CA2011-05-048, 2012-Ohio-3046, ¶ 33, citing *In re Guardianship of Hards*, 11th Dist. No. 2007-L-150, 2009-Ohio-1002, ¶ 36. "The performance of the obligation must have been rendered impossible without any fault of the party asserting the defense." *Id.*, citing *Hards* at ¶ 36. " 'A party must take all reasonable steps within [his or] her power to comply with the court's order and, when raising the defense of impossibility, must show "categorically and in detail" why [he or] she is unable to comply with the court's order.' " *Robinson v. Rummelhoff*, 10th Dist. No. 13AP-410, 2014-Ohio-1461, ¶ 35, quoting *Briggs v. Moelich,* 8th Dist. No. 97001, 2012-Ohio-1049, ¶ 15, citing *Lahoud v. Tri-Monex, Inc.*, 8th Dist. No. 96118, 2011-Ohio-4120, ¶ 54. The party seeking to raise impossibility of compliance must prove the defense by a preponderance of the evidence. *Rife* at ¶ 10, citing *Hopson* at ¶ 20.

{¶ 18} Section 7 of the SPP governs the parties' rights and responsibilities regarding parenting time. As relevant here, Section 7 states:

Mother shall have parenting time at all times that are not Father's parenting time. Father's parenting time is as follows:

1. Weekends: Alternating weekends from Friday at 6 p.m. until Sunday at 6 p.m. This alternating weekend rotation shall not change, even when interrupted by holiday, birthday, summer and/or vacation parenting time.

* * *

7. Transportation: Either parent may select a designee to provide any or all of their transportation obligation for the exchange of the child. The designee must be a licensed and insured driver, must be well known to the child, and clearly identified to the other parent in advance of the exchange. Child Safety restraints must be used as required by law. Unless agreed otherwise the parties shall divide the transportation by transferring the child at the beginning and end of all parenting time exchanges at an agreeable location in Delaware, Ohio[.] If the parties cannot agree on a specific location the exchange shall take place at the Wendy's Restaurant located at 185 South Sandusky Street, Delaware, Ohio, 43015. If that location becomes unavailable, then they shall exchange at the closest fast food location to the address set forth herein.

(SPP at 5-6, 11.)

{¶ 19} Father provided the following testimony at the trial before the magistrate. Father was scheduled to have his regular weekend parenting time from Friday, December 18, 2020 at 6 p.m. until Sunday, December 20, 2020 at 6 p.m. in accordance with Section 7.1 of the SPP. On Friday, December 11, 2020, Mother's attorney sent an email to Father's attorney which advised, in part:

Given that [the child] has testified positive for COVID, a factor your client [Father] was notified of just moments after my client [Mother] was alerted, he is now under quarantine until December 19. Per the regulations, and as detailed to my client [Mother] in her discussions with the health department, your client [Father] and his household should be under quarantine until December 17 (ten days from last contact with [the child]). Further, my client [Mother] and her household are under quarantine until December 28. Given this, parenting time will obviously need to be adjusted. As [the child's] quarantine period will be over but my client [Mother] will be unable to transport him, as hers will not, if your client [Father]

wishes to exercise a partial weekend from 9:00 a.m., December 19, to 6 p.m., December 20, he can do so by picking [the child] up at my client's [Mother's] home and returning him thereafter. The same will have to be arranged for the start of his winter break parenting time, as my client [Mother] will still be under quarantine. My client [Mother] wants to make very clear that your client [Father] will need to pull into her driveway for these exchanges for [the child's] safety. As you may be aware, there was a serious issue with your client [Father] parking on the road and almost causing an accident while crossing such due to his lack of caution. Due to such, my client [Mother] made arrangements for the exchanges to occur elsewhere to assure [the child's] safety. In the interest of allowing these exchanges, please assure your client [Father] parks in the driveway.

(Sept. 8, 2021 Tr. Vol. II; Pltf.'s Ex. 25.)

{¶ 20} Father's attorney forwarded the email to Father on December 13, 2020. Father testified that Mother's email did not expressly state that she had tested positive for COVID-19; rather, it stated only that she was under quarantine until December 28, 2020. Father further testified that the email essentially reduced his parenting time by one day and set forth three conditions on the exercise of that limited parenting time: (1) he would be responsible for 100 percent of the driving, (2) he had to drive from his home in Columbus to Mother's home in Findlay, and (3) he had to park in Mother's driveway to facilitate the exchange of the child. Regarding the third condition, Father noted that Mother's husband previously had informed him that parking in Mother's driveway was forbidden and would result in criminal trespass charges being filed against him. Father averred that no provision of the SPP sanctioned Mother's imposition of these three conditions.

{¶ 21} On Friday, December 18, 2020, Father sent an electronic message to Mother through the Our Family Wizard website, which stated: "Per your request, I will delay my parenting time this weekend to accommodate [the child's] quarantine period. I will be in Delaware to receive him tomorrow at 9 a.m." (Sept. 8, 2021 Tr. Vol. II at 281-82.) Later that same day, Mother responded through the Our Family Wizard website, averring: "Given my extended quarantine, you will need to pick [the child] up at my home. If you choose not to, you are willingly forfeiting your parenting time." (Sept. 8, 2021 Tr. Vol. II at 283.) Father testified that on December 19, 2020, in accordance with the terms of the SPP, he

drove to the designated meeting place in Delaware to pick up the child; neither Mother nor the child were there.

{¶ 22} Father further testified that Mother never told him that she had COVID-19 or that she was too ill to drive to Delaware; indeed, she offered no explanation as to why she could not drive the child there. After missing his parenting time on December 19 and 20, 2020, Father directed his attorney to file a motion for contempt against Mother on December 22, 2020. After the contempt motion was filed, Mother notified Father that her quarantine period had changed, and that she would adhere to the terms of the SPP for the commencement of Father's winter break parenting time on December 26, 2020.

{¶ 23} On cross-examination, Father acknowledged that Mother offered him a means to exercise his parenting time on December 19 and 20, 2020 after the child's quarantine was lifted; however, he did not take that opportunity because he was not required to do so under the terms of the SPP. Father took exception to Mother's attorney's suggestion that he would rather forfeit his parenting time than travel to Findlay to accommodate Mother's Covid-19 quarantine period, stating he "did what the [SPP] requires me to do" and that he "followed the [SPP]." (Sept. 8, 2021 Tr. Vol. II at 297.) Father testified that Mother's assertion in the email that she and her household were under quarantine did not provide a reason for her failure to transport the child to Delaware in accordance with the SPP. Father noted that Section 7.7 of the SPP permits either parent to select a designee to transport the child to the exchange location.

{¶ 24} Father further acknowledged that despite having been informed by Mother that she would not transport the child to Delaware on December 19, 2020, he made the 45 minute drive to Delaware, waited 15 minutes, and, when Mother and the child did not show up, made the 45 minute drive back to Columbus. He asserted he was willing to make the two-hour round-trip drive from Columbus to Delaware rather than make the four-hour round-trip drive from Columbus to Findlay because he was "follow[ing] the [SPP]." (Sept. 8, 2021 Tr. Vol. II at 302.)

{¶ 25} During his redirect examination, Father reiterated that the SPP does not permit Mother to impose new conditions upon the exercise of his parenting time rights and that Mother did not arrange for a third-party to transport the child as permitted by the SPP.

{¶ 26} Mother testified at the trial before the magistrate as follows. When the child was diagnosed with COVID-19, she spoke to health department personnel about quarantine protocols, which, according to Mother, included a prohibition against leaving home. Father objected to this testimony on grounds that Mother had failed to lay a foundation, through testimony or documentary evidence, setting forth the details of the quarantine protocols alleged to have been conveyed to Mother by the health department.

{¶ 27} Following a brief off-the-record pause for the court reporter to read back the previous series of questions, Mother resumed her testimony. Mother averred she believed the health department's quarantine protocols prohibited her from leaving her home to transport the child for the exchange with Father. According to Mother, following those protocols was more important than transporting the child for the exchange. Mother averred that everyone in her household had COVID-19 and she did not want to put anyone else at risk of contracting it, including any potential designated driver. Mother further testified that because she had tested positive for COVID-19 her quarantine period ended in time for her to transport the child for the winter break exchange in accordance with the SPP. Accordingly, she denied Father's allegation that she shortened her quarantine period only in response to his filing of the contempt motion on December 22, 2020.

{¶ 28} In response to Father's testimony regarding Mother's directive that he was not to park in her driveway, Mother averred that she had advised Father that he was permitted to park in her driveway and that she preferred he do so due to safety concerns about traffic in the area. According to Mother, Father still refused to park in her driveway; she accommodated Father's refusal by suggesting they meet at another location close to her home.

{¶ 29} On cross-examination, Mother was questioned about the source of the quarantine protocol she claimed to have followed in refusing to transport the child to Delaware on December 19, 2020. Mother averred she spoke with someone from the health department via telephone, who advised her of the quarantine protocol. Mother explained that when a person tests positive for COVID-19, the health department contacts that person by telephone for purposes of contact tracing and to provide instructions about quarantine protocols, which included not leaving home. Mother averred that she and her family strictly observed the quarantine protocols; indeed, they did not leave the house for any reason

during the quarantine period. When asked why she could not have quarantined in the car in order to transport the child, Mother reiterated that she was not permitted to leave her house; she also set forth various scenarios where she could have exposed another person to COVID-19 if she were to drive the child to Delaware, such as if she had to take the child into a public restroom or she was involved in an automobile accident.

{¶ 30} Mother acknowledged the health department could not change the provisions of the SPP regarding Father's parenting time rights. However, she stated she was not willing to risk someone else's life by exposing them to COVID-19. She also noted that her request that Father drive to Findlay to retrieve the child would not be repeated, as such request was due to the "once in a lifetime" pandemic. (Sept. 8, 2021 Tr. Vol. II at 411.)

{¶ 31} Mother admitted her husband had threatened to have Father arrested if he parked in the driveway of their former home (in which Mother had no ownership interest); however, because the couple currently lived in a different home (in which Mother had an ownership interest), Father was free to park in the driveway without the threat of criminal consequences.

{¶ 32} Upon this evidence, the magistrate determined Mother did not follow the specified terms of the SPP regarding exchanging the child in Delaware on December 19, 2020; however, Mother established the defense of impossibility of compliance in that she believed it was not appropriate and/or safe for her travel to the exchange location with the child when she was under CDC-directed quarantine for COVID-19. The magistrate noted Mother's testimony that she did not feel comfortable asking anyone else to transport the child given the serious risk of illness presented by COVID-19, and the restrictions placed on her and members of her immediate household. Accordingly, the magistrate found there were no other persons who could reasonably transport the child under the circumstances. The magistrate further noted Father's refusal to accept what the magistrate characterized as Mother's "reasonable alternative," which involved him driving to and from Mother's home in Findlay, and Father's decision to drive to Delaware despite Mother's clear advisement that she and the child would not be there. (Mag.'s Decision at 15.)

{¶ 33} At the May 3, 2022 hearing on Father's objections, Father argued Mother failed to establish it was impossible for her to comply with the SPP regarding Father's weekend parenting time on December 19 and 20, 2020. Specifically, Father asserted that

although Mother testified about "a positive [COVID-19] test" and quarantine protocols imposed by the health department, she provided no documentation confirming a positive COVID-19 test or identifying the specific health department or the quarantine protocols imposed by said health department. (May 3, 2022 Tr. at 11.) Father further maintained Mother did not assert that she requested, but was refused, transportation help from family or friends; rather, she testified she would not request transportation help from anyone. Father argued the magistrate "fabricated [facts]" as to "a CDC imposed quarantine" and that "there were no other people who could * * * reasonably provide [transportation of the child] for * * * [M]other," as no testimony supported these findings. (May 3, 2022 Tr. at 11-12.)

{¶ 34} In response, Mother pointed to Father's exhibit 25 (Mother's December 11, 2020 email to Father) as evidence that Mother had tested positive for COVID-19 and was under quarantine pursuant to health department protocols and that she had presented Father a viable option for exercising his parenting time after the child's quarantine period expired, but he refused to do so. Mother also pointed to that same exhibit and her testimony that she did not enlist anyone to transport the child because she did not want to put them at risk of contracting COVID-19.

{¶ 35} Father argued in rebuttal that his exhibit 25 was self-serving and contained no indication from any federal, county, or local health agency that Mother was under quarantine following a positive COVID-19 test. Father acknowledged that exhibit 25 established that Mother offered him the option of retrieving the child from her home in Findlay; however, he noted there were unreasonable conditions accompanying that offer.

{¶ 36} In its October 12, 2022 decision and entry, the trial court provided a detailed recitation of the evidence contained in the record, concluded that Mother was not in contempt for Father's missed parenting time on December 19 and 20, 2020, and overruled Father's objection in that regard. The court stated:

> Based on the record, the Court finds Mother had an inability to effectuate an exchange of the child while she, the child, and her household were in the middle of a positive Covid-19 outbreak. She did not completely refuse Father parenting time as she offered an alternative for Father to pick up the child, which he refused. While certainly not the ideal exchange circumstances Father wanted, it was imperative for the parties to be flexible during this unprecedented time in a pandemic.

> The child's initial quarantine and Mother's own quarantine made it impossible for her to drive multiple hours to exchange the child. Covid-19 has caused unprecedented times and instances which the parties and the Court's must continually navigate. The Court also notes that during December 2020, Franklin County and the State of Ohio were in constantly ever evolving mandates, including work from home orders and countless efforts trying to prevent the spread of the pandemic. Mother's asserted defense that she was under Covid-19 quarantine is well taken, therefore, the Court does not find her in Contempt for Father's missed parenting time in December 2020. Father's Objection to this point is not well taken.

(Oct. 12, 2022 Decision & Jgmt. Entry at 10.)

{¶ 37} Father contends the trial court erred by failing to find Mother in contempt, as her offer of an alternative means for Father to exercise his parenting time was unnecessary and unreasonable, and she presented insufficient evidence to sustain her burden of proving that it was impossible for her to transport the child to Delaware.

{¶ 38} As to Mother's offer of alternative parenting time, Father maintains that such did not change the fact that Mother violated the SPP. Father posits that court orders would become unenforceable if parents could avoid contempt findings simply by offering the other parent an alternative arrangement. Father further argues that the alternative was unnecessary, as the "stay-at-home order" issued by the Director of the Ohio Department of Health ("ODH") on March 22, 2020 expressly authorized parents to transport children pursuant to court orders.[3] Father also contends the alternative was unreasonable, as it required him to: (1) do all the driving, (2) make two four-hour round-trips to Findlay in a 31-hour period, and (3) park in Mother's driveway, which could have subjected him to criminal charges.

{¶ 39} Regarding Mother's impossibility defense, Father first claims Mother provided no evidence that she was legally prohibited from transporting the child. Father maintains that Mother only testified she spoke to an unidentified individual at an unidentified health department and, based on this interaction, believed she could not leave

---

[3] The stay-at-home order mandated, among other things, that Ohio residents stay at home or at their place of residence except for "[e]ssential [t]ravel," which included "[t]ravel required by * * * court order, including to transport children pursuant to a custody agreement." *See* ODH's Director's Stay At Home Order at ¶ 14(e). https://coronavirus.ohio.gov/static/publicorders/DirectorsOrderStayAtHome.pdf (accessed Sept. 26, 2023).

her home due to COVID-19. Father notes that Mother submitted no evidence of any specific protocol affirmatively stating that she could not leave her home. Father reiterates that the ODH stay-at-home order expressly authorized parents to transport children in accordance with court orders.

{¶ 40} Father further argues Mother presented no evidence that it was medically impossible for her to personally transport the child. Father asserts Mother presented no evidence that she was sick or even symptomatic due to COVID-19. He further maintains that even if Mother believed she needed to quarantine, she could have done so in her car on the drive to Delaware without exposing others to COVID-19.

{¶ 41} In addition, Father argues Mother presented no evidence that it was impossible for a third-party to transport the child. Father notes the SPP permits the parties to utilize a third-party for transportation purposes. Father asserts Mother admitted during her testimony that she did not attempt to make transportation arrangements using a third-party because she did not want to put anyone else at risk of contracting COVID-19. Father claims that because the child's quarantine had ended as of December 19, 2020, a third-party transporter would not have been put at risk of contracting COVID-19.

{¶ 42} In support of his arguments, Father cites *Lindsey v. Lindsey*, 11th Dist. No. 2020-G-0275, 2021-Ohio-2060. In that case, the parties were subject to a shared parenting decree which ordered 50/50 physical parenting time with their child. The decree stated the allocation of parenting time was flexible and could be modified by mutual agreement of the parties as warranted. In March 2020, at the outset of the COVID-19 pandemic, the mother unilaterally determined that the father could not physically visit the child due to concerns relating to the virus and its potential transmission. As an alternative, the mother provided the father with "face-time" parenting time. Unsatisfied with that arrangement, the father filed a contempt motion. Following a hearing, the magistrate recommended the mother be held in contempt. The trial court overruled the mother's objections to the magistrate's decision and adopted the magistrate's recommendation.

{¶ 43} On appeal, the mother argued that the father failed to meet his burden of establishing contempt. The mother claimed that regardless of her prima facie violation of the parenting-time order, compliance with the order was impossible due to the COVID-19 pandemic. The court rejected the mother's impossibility defense on multiple grounds.

First, the court determined the mother could have, but did not, move to modify parenting time on grounds that the pandemic justified such a modification. Second, the court rejected the mother's argument that compliance with the parenting-time order was unreasonable due to her legitimate concerns relating to the pandemic and, specifically, her good-faith belief that violation of the order would protect the safety of her child. In doing so, the court noted that the March 22, 2020 stay-at-home order included an exception for transporting children pursuant to custody orders. The court reasoned that if travel for such a purpose is essential, it would reasonably follow that visitation and custody transfers are equally essential. The court concluded that despite the mother's assertion that her decision to withhold father's physical parenting time was due to her legitimate concern for the safety of the child, her ultra vires actions were inconsistent with the stay-at-home order's directives. Finally, the court determined that although the evidence reflected that family members with whom the mother and child lived took precautions to protect household members from significant exposure to strangers, adherence to the parenting time schedule would not have placed the child in the path of imminent harm, given other evidence that the father lived alone, worked remotely, and had little contact with third parties.

{¶ 44} Here, Mother cites to a decision from another appellate district that took a different approach to contempt proceedings in the COVID-19 era. In *In re S.S.*, 9th Dist. No. C.A. 21AP0022, 2023-Ohio-245, the parents of S.S. were found to be unsuitable. H.N., the child's maternal grandmother, was awarded legal custody; S.C., the child's paternal grandmother, was granted visitation. In April 2020, S.C. filed a contempt motion asserting that H.N. began refusing S.C.'s court-ordered visitation with the child in "February 2020" due to the COVID-19 pandemic. *Id*. at ¶ 3. The trial court concluded that H.N. was justified in taking steps necessary to protect the health and safety of S.S. from illness, as the evidence demonstrated that H.N. withheld visitation for fear of violating ODH's stay-at-home order and to protect the child and her family. The trial court found H.N.'s actions to be reasonable in light of the circumstances at the time and the competing orders for both court-ordered visitation and to stay at home.

{¶ 45} On appeal, the court determined the trial court did not abuse its discretion in denying S.C.'s motion for contempt. In so determining, the court noted its consistent holdings that "if contempt proceedings are invoked solely by the person aggrieved by

disobedience of the court's order, a refusal to punish for contempt is largely within the discretion of the trial court." *Id.* at ¶ 16, citing *SandiCare, L.L.C. v. Wilson*, 9th Dist. No. 28306, 2017-Ohio-7596, ¶ 14. The court concluded that "[d]espite the fact that [H.N.] denied [S.C.] some of her court-ordered visitation during the COVID-19 pandemic, the trial court has discretion in determining issues of contempt, and it exercised that discretion in this matter by declining to find [H.N.] in contempt." *Id.*, citing *State ex rel. DeWine v. Miller*, 194 Ohio App.3d 86, 2011-Ohio-2107, ¶ 12 (4th Dist.).

{¶ 46} Both *Lindsey* and *S.S.* are factually distinguishable from the instant case, as in neither of those cases was there evidence that either the caregiver or the child had tested positive for COVID-19 or had been quarantined due to a positive COVID-19 test. Rather, in *Lindsey*, the mother averred that she was simply concerned about the possibility of the child contracting COVID-19 when visiting the father. In *S.S.*, the maternal grandmother withheld visitation to protect the child from contracting COVID-19 and to adhere to ODH's stay-at-home order. By contrast, in the instant case, the child had tested positive for COVID-19, and, although the child's quarantine period expired on December 19, 2020, Mother and other members of her household had tested positive for COVID-19 and were quarantining at home in accordance with health department directives Mother received. We note that CDC guidelines during the time period at issue dictated a 14 to 7-day

quarantine period due to COVID-19 exposure and depending on symptoms and test results.[4] *See Kulpa v. Kulpa*, 7th Dist. No. 22 BE 0010, 2023-Ohio-891, ¶ 29.[5]

{¶ 47} We find the approach employed by the *S.S.* court a more appropriate method for assessing contempt in the context of COVID-19, an unprecedented global pandemic. Here, the trial court found that Mother was unable to transport the child for the exchange

---

[4] *See* except from Transcript of CDC Press Briefing, Wednesday, December 2, 2020:

> OPERATOR: GOOD MORNING. WELCOME TO TODAY'S CONFERENCE CALL. AT THIS TIME YOUR LINES HAVE BEEN PLACED ON LISTEN ONLY UNTIL THE QUESTION AND ANSWER PORTION OF OUR CALL. AT WHICH TIME YOU WILL BE PROMPTED TO PRESS STAR ONE ON YOUR TOUCHTONE PHONE. PLEASE ENSURE YOUR LINE IS UNMUTED AND RECORD YOUR NAME AND AFFILIATION TO BE INTRODUCED TO ASK YOUR QUESTION. YOU WILL BE LIMITED TO ONE QUESTION FOR TODAY'S CONFERENCE. THE CONFERENCE IS BEING RECORDED. IF YOU HAVE ANY OBJECTIONS YOU MAY DISCONNECT AT THIS TIME. I WILL TURN THE CONFERENCE OVER TO OUR HOST MR. BEN HAYNES. YOU MAY PROCEED.

> HAYNES: THANK YOU, JILL. THANK YOU ALL FOR JOINING US TODAY FOR THIS BRIEFING TO DISCUSS CHANGES TO CDC'S QUARANTINE GUIDANCE AND CONSIDERATIONS TO DOMESTIC TRAVEL. TODAY WE ARE JOINED BY DR. HENRY WALKE, THE INCIDENT MANAGER FOR CDC'S COVID-19 RESPONSE. HE IS THE CDC EXPERT CHARGED WITH OVERSEEING THE DAY-TO-DAY MANAGEMENT OF THE COVID PANDEMIC. WE ARE ALSO JOINED BY DR. JOHN BROOKS THE CHIEF MEDICAL OFFICER FOR CDC'S COVID-19 RESPONSE. AND FINALLY, DR. CINDY FRIEDMAN, LAST NAME F-R-I-E-D-M-A-N CHIEF OF CDC'S TRAVEL BRANCH. DR. WALKE WILL PROVIDE OPENING REMARKS AND OUR EXPERTS WILL BE HAPPY TO TAKE YOUR QUESTIONS. THIS IS AN ON THE RECORD BRIEFING. AT THIS TIME I WILL TURN THE CALL OVER TO DR. WALKE.

> WALKE: THANK YOU, BEN. CDC'S FOREMOST COMMITMENT TO OUR NATION IS TO PROTECT THE HEALTH OF THE AMERICAN PUBLIC. WE DO THIS BY LEARNING ALL WE CAN ABOUT EMERGING INFECTIOUS DISEASES AND APPLYING THAT KNOWLEDGE TO REASONABLE, COMMON SENSE RECOMMENDATIONS. THIS IS ESPECIALLY TRUE IN FACING THIS PANDEMIC. AS WE LEARN MORE ABOUT THE VIRUS THAT CAUSES COVID-19, WE CONTINUE TO REFINE OUR GUIDANCE TO PREVENT TRANSMISSION AND PROTECT AMERICANS. SINCE THE START OF THE PANDEMIC, CDC HAS RECOMMENDED THAT THOSE WHO HAVE BEEN EXPOSED TO SOMEONE WITH COVID-19 QUARANTINE FOR 14 DAYS AFTER EXPOSURE. QUARANTINE HELPS PREVENT SPREAD OF DISEASE THAT CAN OCCUR BEFORE A PERSON KNOWS THEY HAVE THE VIRUS. *CDC CONTINUES TO RECOMMEND QUARANTINING FOR 14 DAYS AS THE BEST WAY TO REDUCE THE RISK OF SPREADING COVID-19.*

> *ADDITIONALLY, AFTER REVIEWING AND ANALYZING NEW RESEARCH AND MODELING DATA, CDC HAS IDENTIFIED TWO ACCEPTABLE ALTERNATIVE QUARANTINE PERIODS THAT WE ARE ANNOUNCING TODAY. UNDER THESE OPTIONS, QUARANTINE CAN END AFTER TEN DAYS WITHOUT A COVID-19 TEST IF THE PERSON HAS REPORTED NO SYMPTOMS OR AFTER SEVEN DAYS WITH A NEGATIVE TEST RESULT IF THE PERSON HAS REPORT[ED] NO[] SYMPTOMS.*

(Emphasis added.) https://www.cdc.gov/media/releases/2020/t1202-covid-19-telebriefing.html (accessed Sept. 26, 2023).

due to her positive COVID-19 test. Mother's testimony alone supported that finding, as she stated she tested positive for COVID-19 and was directed by a health department official to quarantine in her home. The trial court also found Mother did not completely refuse Father parenting time, as she offered an alternative for Father to transport the child, which he refused. Mother's testimony alone supported that finding, as she stated she informed Father that he could retrieve the child from, and return the child to, her home in Findlay following expiration of the child's quarantine period; however, Father refused to do so. Although the trial court did not expressly address in its findings Mother's testimony regarding her unwillingness to place a third-party at risk of contracting COVID-19 while transporting the child, the trial court implicitly did so in finding that Mother was unable to effectuate an exchange of the child while she, the child, and her household were in the midst of a positive COVID-19 outbreak.[6]

{¶ 48} Father presented the arguments he now makes on appeal at trial before the magistrate, in his objections to the magistrate's decision, and in oral argument before the trial court on his objections to the magistrate's decision. Neither the magistrate nor the trial court were persuaded by any of Father's arguments. Given the particular circumstances of the instant case in light of the unprecedented nature of the COVID-19 pandemic and the uncertainty surrounding it, especially in December 2020, we conclude that Mother's actions were reasonable and the trial court did not abuse its discretion in so finding. This court has held that "a trial court may decline to hold a party in contempt even when one party is definitively aggrieved by the disobedience of another party of an order of the court because contempt proceedings are primarily for the vindication of the dignity and sovereignty of the state in the exercise of its judicial power." *Hopson* at ¶ 12, citing *Lentz v. Lentz*, 9 Ohio App. 329, 333 (10th Dist.1924).

---

[5] In *Kulpa*, an infectious disease investigator with the Belmont County Health Department testified that CDC guidelines in early December 2021 included a ten-day quarantine period from first symptoms, and, if no symptoms were reported, a ten-day quarantine period would be from a positive test. *Id.* at ¶ 9. We acknowledge that *Kulpa* involved allegations of contempt during a different time period than in the case before us–nearly one year later–however, we note the Seventh District's observance of evidence of the CDC guidelines in effect at the time of the contempt allegations in *Kulpa*, as we have observed regarding the CDC guidelines in effect at the time of the contempt allegations before us.

[6] In its recitation of the facts, the trial court noted Mother's testimony that her entire household had COVID-19; accordingly, she was not going to put anyone else at risk of contracting the virus.

{¶ 49} In light of the foregoing, we overrule Father's first and second assignments of error.

{¶ 50} In his third assignment of error, Father contends the trial court erred as a matter of law, or, alternatively, that the trial court abused its discretion, by failing to order Mother to reimburse him for the full cost of the trial transcript he ordered in prosecuting his objections to the magistrate's decision.

{¶ 51} In his April 21, 2022 affidavit in support of his request for attorney fees, Father requested Mother reimburse him for the full cost of the trial transcript. Father attached copies of receipts and statements from the court reporters establishing the total cost of transcript preparation. In its decision and judgment entry, the trial court acknowledged Father's affidavit, including the $2,079.20 transcript preparation costs.

{¶ 52} The court cited to R.C. 3109.051(K), which states in part:

> If any person is *found in contempt* of court for failing to comply with or interfering with any order or decree granting parenting time rights issued pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights issued pursuant to this section, section 3109.11 or 3109.12 of the Revised Code, or any other provision of the Revised Code, the court that makes the finding, in addition to any other penalty or remedy imposed, *shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt*, and may award reasonable compensatory time parenting time or visitation to the person whose right of parenting time or visitation was affected by the failure or interference if such compensatory parenting time or visitation is in the best interest of the child.

(Emphasis sic.) (Oct. 12, 2022 Decision & Jgmt. Entry at 14-15.)

{¶ 53} The court, emphasizing the italicized language, analyzed the evidence related to Father's request for attorney fees, including the itemized statement provided regarding services rendered and time expended, the parties' stipulation that the attorney fees were reasonable, and the parties' relatively equal income and assets. The court also noted Father's assertion that Mother was unsuccessful on all her motions for contempt and that one full day of trial was dedicated to Mother's motions. The court awarded attorney fees to

Father for the prosecution of his successful contempt, i.e., his missed parenting time in summer 2020 and then stated it would award court costs arising out of the contempt proceeding relative to that motion. In its purge order, the court ordered Mother pay Father $1,000 in costs and expenses related to transcript preparation.

{¶ 54} Father maintains that under the plain language of R.C. 3109.051(K), when a party is found in contempt for failing to comply with or interfering with an order granting parenting time rights, the court "shall assess all court costs arising out of the contempt proceeding" against the contemnor. Thus, argues Father, because Mother was found in contempt for violating Father's parenting time rights in summer 2020, the trial court was required by R.C. 3109.051(K) to assess against Mother the entire cost of transcribing the trial before the magistrate, even though at trial the magistrate considered numerous motions and multiple allegations of contempt made by both Mother and Father, and Father only ultimately prevailed on one of the four allegations of contempt he made against Mother.[7]

{¶ 55} R.C. 3109.051(K) does not address whether the term "court costs" includes the costs of transcribing a transcript. Nevertheless, as the trial court assessed against Mother in favor of Father $1,000 in costs and expenses "related to *Transcript* fees," and Mother did not appeal, for purposes of this discussion we assume that "court costs" includes the costs of transcribing a transcript. (Emphasis sic.) (Oct. 12, 2022 Decision & Jgmt. Entry at 16.) R.C. 3109.051(K). Such assumption would be consistent with R.C. 2303.21 which states that "[w]hen it is necessary in an appeal, or other civil action to procure a transcript of a judgment or proceeding, or exemplification of a record, as evidence in such action or for any other purpose, the expense of procuring such transcript or exemplification shall be taxed in the bill of *costs* and recovered as in other cases." (Emphasis added.)

---

[7] At the April 15 and September 8, 2021 hearings, the magistrate considered the following motions filed by Mother: July 7, 2020 motion for appointment of parenting coordinator; September 15, 2020 motion for contempt; and March 26, 2021 motion for contempt. The magistrate also considered the following motions filed by Father: October 14, 2020 motion for contempt; December 22, 2020 motion for contempt; and April 8, 2021 motion for attorney fees. In the two motions for contempt which Father filed, he made four specific allegations of contempt. The magistrate found Father did not prevail on any of the four specific allegations. Father objected to the magistrate's findings with regard to all four of the specific allegations. The trial court sustained Father's objections as to one of the four specific allegations. Mother did not object to the magistrate's findings that she did not prevail on any of the five specific contempt allegations which she made in her two motions.

{¶ 56} R.C. 3109.051(K) also does not address the definition of "all" when considered in the context of the requirement, upon filing objections to a magistrate's decision, to provide a transcript of the trial before a magistrate. Civ.R. 53(D)(3)(b)(iii) and Juv.R. 40(D)(3)(b)(iii) both provide that an objection to a magistrate's factual finding, whether or not specifically designated as a finding of fact, "shall be supported by a transcript of all the evidence submitted to the magistrate *relevant to that finding* or an affidavit of that evidence if a transcript is not available." (Emphasis added.) Accordingly, here, pursuant to Civ.R. 53(D)(3)(b)(iii) and Juv.R. 40(D)(3)(b)(iii), Father was required to support his objections to the magistrate's factual findings with a transcript of the evidence presented at trial relevant to the factual findings made as to his four specific allegations of contempt.

{¶ 57} Finally, Father fails to cite, and our independent research has not produced, any Ohio case that has considered whether R.C. 3109.051(K) mandates assessment of the cost of transcribing the transcript of an entire trial against a contemnor under the circumstances presented in this case. Our independent research has, however, revealed one case from the Fourth District Court of Appeals that addresses a trial court's assessment of costs to each party for their own witness fees and one-half of a guardian ad litem bill to each party, circumstances somewhat similar to those in the present case. Although the type of costs considered in *Frick v. Howell*, 4th Dist. No. 14CA19, 2015-Ohio-3639, differs from the type of costs in the case before us we find the reasoning employed in *Frick* to be persuasive. In *Frick*, the appellant contended the trial court erred by failing to order the appellee to pay all of the court costs arising from contempt proceedings. The Fourth District determined the trial court did not err in determining the allocation of court costs. *Id.* at ¶ 49. The court first noted that R.C. 3109.051(K) "only mandates the assessments of court costs 'arising out of the contempt proceeding.' " *Id.*, quoting R.C. 3109.051(K). The court further noted that the appellee was "only found in contempt for denying visitation on some of the dates listed in the show cause motions. Appellee was not found to be in contempt for other alleged denials of visitation or for otherwise violating the court's order." *Id.* The court concluded that the trial court "appropriately limited" its award of court costs for the specific finding of contempt." *Id.*

**{¶ 58}** Therefore, taking all the above into consideration, in this case, as it relates to the assessment of the cost of the transcript in the circumstances before us, we cannot say the trial court erred in declining to order Mother to reimburse Father for the cost of the transcript for the entire trial.

**{¶ 59}** Father argues that regardless of his lack of success on his objections as they relate to the additional three specific allegations of contempt, as a practical matter, he had no choice but to obtain the entire transcript of the two-day trial. Father correctly notes that in its findings regarding Mother's violation of Father's summer 2020 parenting time rights, the trial court cited to testimony and evidence provided during both days of the trial. Nevertheless, as explained above, we cannot say the trial court abused its discretion in limiting its award of court costs for transcript fees pursuant to R.C. 3109.051(K) to $1000. We find such assessment of court costs for transcript fees was reasonable under the circumstances given that only part of the transcript preparation cost was relevant to Father's objections and to the court's specific contempt findings.

**{¶ 60}** For the foregoing reasons, Father's third assignment of error is overruled.

## IV. Conclusion

**{¶ 61}** Having overruled Father's three assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

LUPER SCHUSTER and EDELSTEIN, JJ., concur.